[No. 44211.   En Banc.   October 27, 1977.]

ASSOCIATION OF CAPITOL POWERHOUSE ENGINEERS, *Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*Neil J. Lynch* (of *Lynch & Lynch*), for appellant.

*Slade Gorton, Attorney General, Kenneth W. Elfbrandt, Assistant, Cordes, Cordes & Younglove, Clifford F. Cordes, Jr.,* and *Edward Earl Younglove III,* for respondents.

HOROWITZ, J.—Plaintiff Association of Capitol Power-house Engineers, a state employee organization, attacks the constitutionality of the agency shop provisions of RCW 41.06.150, as amended in 1973, on behalf of six of its members. It also challenges the continued inclusion of these six engineers in the Division of Buildings and Grounds as an appropriate collective bargaining unit to which the agency shop provisions apply. The trial court upheld the amended statute and the propriety of the engineers' continued inclusion in the Division for collective bargaining purposes. We affirm.

Plaintiff state employee organization has long been recognized by the State Personnel Board. The Association represents the six stationary engineers working at the Capitol Campus plant for whose benefit this action is brought. The engineers' duties include looking after boiler maintenance in heating plants. Each engineer is in state civil service and is a member of a collective bargaining unit made up of Division of Buildings and Grounds employees. This bargaining unit was established in 1966 by the State Personnel Board under RCW 41.06, and, in addition to the engineers, includes 110 custodians, 17 gardeners, and from one to four members of other vocations.

From 1966 to 1973, defendant, Washington Federation of State Employees, AFL-CIO (Federation) was the certified exclusive bargaining representative of the unit. During that period, the Federation, without objection from the engineers, looked after all labor interests of the Division.

In 1973, the legislature twice amended RCW 41.06.150. The amended statute empowers the Personnel Board to promulgate rules and regulations concerning personnel administration, including provisions for certification and decertification of exclusive bargaining representatives. The statute then provides:

[A]fter certification of an exclusive bargaining representative and upon said representative's request, the director shall hold an election among employees in a bargaining unit to determine by a majority whether to require as a condition of employment membership in the certified exclusive bargaining representative on or after the thirtieth day following the beginning of employment or the date of such election, whichever is the later, and the failure of an employee to comply with such a condition of employment shall constitute cause for dismissal . . . *Provided further,* That for purposes of this clause membership in the certified exclusive bargaining representative shall be satisfied by the payment of monthly or other periodic dues and shall not require payment of initiation, reinstatement, or any other fees or fines and shall include full and complete membership rights: *And provided further,* That in order to safeguard the right of nonassociation of public employees, based on bona fide religious tenets or teachings of a church or religious body of which such public employee is a member, such public employee shall pay to the union, for purposes within the program of the union as designated by such employee that would be in harmony with his individual conscience, an amount of money equivalent to regular union dues minus any included monthly premiums for union sponsored insurance programs, and such employee shall not be a member of the union but shall be entitled to all the representation rights of a union member . . .

█ This statute, it will be noted, provides for the establishment of an "agency shop" as distinguished from other types of employee union arrangements. Agency and fair shop clauses have been explained as follows:

Agency shop clauses do not require bargaining unit employees to join or remain members of the union as a condition of continued employment. However, if an employee chooses not to join the union, the employee must pay a fee to the exclusively recognized employee organization. The fee is usually, but not necessarily, equal to the amount of union dues, and typically excludes union fines or assessments. The major advantage to the agency shop clause is that while requiring all employees to share the cost of union representation, it allows nonmembers to refrain from all union activity.

Thus, the agency shop clause does not require an employee to associate with an organization to which he or she may be opposed. . . .

. . . A fair share clause defines the amount of the fee as the actual (pro rata) costs of the union's services rather than union dues.

A. Zwerdling, *The Liberation of Public Employees: Union Security in the Public Sector,* 17 B.C. Ind. & Com. L. Rev. 993, 1007–08 (1976).[1] "Closed shop" and "union shop" clauses are discussed in the margin.[2]

The 1973 amendments protect an employee whose religious beliefs forbid membership in the union by requiring only the payment of a sum equal to union dues less included monthly premiums for union sponsored insurance programs. Although the statute does not discuss political expenditures, members who object to the union's expenditures for political purposes may obtain a refund of their share of these expenditures by a publicized, "easily accessible" procedure provided for that purpose by the Federation. Finding of fact No. 16.

Following the enactment of the 1973 amendments, the Division of Buildings and Grounds decided by a majority vote to require "membership" in the Federation as a condition of employment under sanction of dismissal. There is no claim the election procedure was not properly followed. After the election, the six engineers signed membership cards and paid monthly dues under protest.

---

[1] "An agency shop arrangement is not an unfair labor practice under . . . the Taft–Hartley Act, 29 U.S.C. § 158(a)(3) (1970), and is not prohibited by that Act." A. Zwerdling, *supra* at 1007 n.92.

[2] Closed shop agreements require that "all employees . . . be union members at the time of their initial employment." Such a requirement "close[s] the shop" to all nonunion employees. A. Zwerdling, *The Liberation of Public Employees: Union Security in the Public Sector,* 17 B.C. Ind. & Com. L. Rev. 993, 1005 (1976). The Taft–Hartley Act (29 U.S.C. § 158(a)(3) (1970)) outlaws the closed shop in the private sector. A. Zwerdling continues at page 1006: "Union shop clauses mandate that all employees who are within a particular bargaining unit and covered by a collective bargaining agreement must join the exclusively recognized employee organization and must pay dues and initiation fees upon the completion of a specified time period, usually 30 days."

Subsequently, these engineers petitioned the Personnel Board to remove them from the Division of Buildings and Grounds collective bargaining unit. After hearing, the Board denied the request. Plaintiff then appealed the Board's action to the Superior Court. In that appeal, the plaintiff contended also the 1973 amendments to RCW 41.06.150 were unconstitutional for reasons we later discuss. The trial court entered judgment, affirming the Personnel Board's decision, supported by findings of fact and conclusions of law. The court also upheld the constitutionality of RCW 41.06.150. Plaintiff appealed to this court.

Plaintiff first contends the trial court erred in upholding the Board's decision requiring the continued inclusion of the six engineers in the Division of Buildings and Grounds collective bargaining unit on the ground the Board failed to comply with the inclusion criteria established by RCW 41.06.150. We disagree.

Finding of fact No. 4 states the unit was established "pursuant to the provisions of the state civil service law, RCW 41.06." Finding of fact No. 10 states that none of the six engineers complained about being in the unit from 1966 until the shop election in October 1973, and during that time there was no change in circumstances warranting a change in the bargaining unit under the criteria set forth in RCW 41.06.150. Neither of these findings are set out in plaintiff's brief on appeal and therefore must be accepted as verities. *State ex rel. Bain v. Clallam County Bd. of County Comm'rs,* 77 Wn.2d 542, 544, 463 P.2d 617 (1970).

Finally, finding of fact No. 21 states:

That the organization of the bargaining unit which included the plaintiff's members was initially drawn on an organizational basis in the light of the criteria established by RCW 41.06.150, as amended; that the Board was authorized and presumably did weigh the appropriate statutory criteria of duties, skills, working conditions of employees, and the history of collective bargaining, in assessing the importance of each and in determining the appropriateness of the bargaining unit; that although there was some conflict in the evidence presented to the

Board as to the existence of such criteria, the evidence was sufficient to support the Board's determination that the organization of the bargaining unit was appropriate; and that the law does not require a craft–type unit.

 This finding of fact is not assigned as error and therefore must be treated as a verity on appeal. *Hanson v. Hutt,* 83 Wn.2d 195, 203, 517 P.2d 599 (1973). The Board's determination under RCW 41.06.150 and WAC 356–42–020 of the persons to be included in the bargaining unit will be upheld absent a showing of abuse of discretion. *See Gogerty v. Department of Institutions,* 71 Wn.2d 1, 8, 426 P.2d 476 (1967). We find no such abuse in view of the findings of fact.

Plaintiff next contends the agency shop provisions contained in the 1973 amendments, enacted subsequent to the commencement of the six engineers' employment with the State, violate the engineers' rights under the State Civil Service Law, RCW 41.06. We do not agree.

The 1973 amendments to RCW 41.06.150 were designed to remedy what the legislature apparently believed to be an unfair situation. Those amendments seemingly reflect a concern that all employees contribute to the costs of the union representation from which they benefit. *Cf. Oil, Chemical & Atomic Workers Int'l Union v. Mobil Oil Corp.,* 426 U.S. 407, 416, 48 L. Ed. 2d 736, 96 S. Ct. 2140 (1976) (interpreting congressional intent in allowing union–security agreements under federal law).

Plaintiff, however, argues that until the enactment of RCW 41.06.150, the right of a public employee to join or not to join a union was purely voluntary. It relies on WAC 356–42–010, which provides:

State employees shall have the right to affiliate with, be represented by and participate in, the management of employee organizations. Pursuant to WAC 356–42–010(2), State employees shall have the right to be represented by such organizations in collective negotiations with appointing authorities. No persons or parties shall directly or indirectly interfere with, restrain, coerce or

discriminate against any State employee or group of State employees in the free exercise of these rights.

Plaintiff appears to argue the engineers had a contractual right, based on WAC 356-42-010, to refrain from union membership, a right which it contends is impaired by the 1973 amendments. We find no such contractual right or impairment.

In the first place, nothing in the Civil Service Act prior to the enactment of the 1973 amendments guaranteed public employees the right *not* to join a union. The statutes prior to the amendments were silent on the matter. WAC 356-42-010 only prohibits management from interfering with employees' organizing efforts. Neither the cited regulation nor any earlier regulation contained any provision for or against establishment of an agency shop, with or without an express provision for discharge for nonpayment of dues or other collective bargaining expenses. WAC 356-42-010 (Supp. 1972); WAC 356-32-010 (Supp. 1970); WAC 356-32-010 (Supp. 1969); WAC 356-32-010 (Supp. 1968); WAC 356-32-010 (Supp. 1966).

■ Second, the terms and conditions of public employment for the six engineers are basically controlled by statute, not by contract. *Miller v. State,* 18 Cal. 3d 808, 557 P.2d 970, 135 Cal. Rptr. 386 (1977). It is clearly within the province of the legislature to enact statutes regulating the "mode and appointment and tenure in public employment." *Gogerty v. Department of Institutions, supra* at 5. The six engineers' civil service rights are derived from the State Civil Service Law, of which the 1973 amendments authorizing an agency shop are a part. RCW 41.06.150. These rights are subject to the 1973 amendments, not violated by them.

■■ Plaintiff also contends, however, the amendments are unconstitutional in that they deny the engineers their property rights without due process of law. We cannot agree. We first note there is a presumption the amendments are constitutional and that there are facts sufficient to justify their enactment. The wisdom of a statute is a

matter for legislative determination; if the propriety of the legislative remedy is fairly debatable, the decision of the legislature is binding upon the court. To satisfy its burden of proof, one attacking the constitutionality of a statute must prove beyond a reasonable doubt that no state of facts can reasonably be conceived to support the legislation. *Brewer v. Copeland,* 86 Wn.2d 58, 61–62, 69–70, 542 P.2d 445 (1975).

In this case the legislature may well have believed there were some state employees who were not members of the exclusive bargaining representative but who nevertheless benefitted from its efforts to improve conditions of employment. The 1973 amendments were designed to require them to bear a share of the expenses involved. We note there are a number of state statutes imposing such a requirement.[3] Plaintiff makes no claim the payments required are excessive or that requiring all members of the bargaining unit to contribute their share of collective bargaining expenses is, in principle, unfair. Nor is there any showing that payments are used for any purpose other than collective bargaining.

█ Central to our analysis of the due process claim, however, is the lack of any property right in public employment to be protected by due process. Such a right has not been created by contract or by the civil service statute. Nor is one created by the constitution. *Board of Regents v. Roth,* 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). *See also Bishop v. Wood,* 426 U.S. 341, 344, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976).

---

[3]The following statutes require payment of union dues or a fee equal to union dues: Alas. Stat. §§ 23.40.110, 23.40.220; Ky. Rev. Stat. § 345.050; Mich. Comp. Laws Ann. § 423.210; Mont. Rev. Codes Ann. § 59–1605; Ore. Rev. Stat. §§ 243.650(10), 243.672(1)(c); R.I. Gen. Laws §§ 28–9.3–7, 36–11–2; Wis. Stat. §§ 111.70, 111.81.

The following statutes require payment of a "reasonable or fair" fee: Haw. Rev. Stat. §§ 89.3, 89.4; Mass. Gen. Laws Ann. ch. 150E, § 12 (West); Minn. Stat. Ann. § 179.65 (West).

Vermont requires payment of a fee "not exceeding union dues." Vt. Stat. Ann. tit. 21, §§ 1722, 1726.

In *Yantsin v. Aberdeen,* 54 Wn.2d 787, 345 P.2d 178 (1959) this court stated:

A police officer has no property right in public employment which is protected by the due process clause provisions in our state and Federal constitutions. As said in *Ludolph v. Board of Police Comr's.,* (1938), 30 Cal. App. (2d) 211, 216, 86 P. (2d) 118, 121,
"The right to an office or of employment with the government or any of its agencies is not a vested property right, and removal therefrom will not support the question of due process."

*Yantsin v. Aberdeen, supra* at 788. Moreover, the claim of a property interest in public employment which is not to be subjected to an agency shop requirement is made even less tenable by plaintiff's concession that the six employees are willing to make periodic payments.

We note that Massachusetts upheld the constitutionality of its statutory agency shop provision against due process and equal protection attacks. *Karchmar v. Worcester,* 364 Mass. 124, 301 N.E.2d 570 (1973).

Plaintiff's real objection to the 1973 amendments, reasserted during oral argument, is that they violate the First Amendment freedom of association of the six engineers by compelling membership in the Federation. We do not agree.

The statute authorizes the bargaining unit to act by majority vote to require "membership" in the certified exclusive bargaining representative. The word "membership" characterizes a relationship between the individual employee and the organization for employee representation. The word alone, however, conveys little about the substance of the relationship; it does not define the rights and obligations of the employee.

■ The statute does define the substance of the relationship;

*Provided further,* That for purposes of this clause membership in the certified exclusive bargaining representative shall be satisfied by the payment of monthly or other periodic dues and shall not require payment of initiation,

reinstatement, or any other fees or fines and shall include full and complete membership rights . . .
RCW 41.06.150. The relationship between the individual employee and the organization for employee representation is limited to contribution of dues in exchange for representation. The obligations which we normally include in a definition of membership, such as mandatory compliance with union orders for work actions, are not imposed on employees by this statute.[4] We look beyond form to substance. The relationship required by this statute is not "membership" in any ordinary sense. It is rather akin to a buyer-seller or debtor–creditor relationship for collective bargaining services rendered, whereby the so–called member (buyer or debtor) pays dues covering his share of the expense of collective bargaining benefits to the union (seller or creditor). In the parlance of agency shop statutes, RCW 41.06.150 requires payment of a "service fee" and nothing more. Recognizing the substance of the relationship, we should not be misled by the label attached to it.

Therefore, with regard to plaintiff's First Amendment challenge, our decision is controlled by the holding of the Supreme Court in *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 52 L. Ed. 2d 261, 97 S. Ct. 1783 (1977). The Michigan statute regulating union representation of local government employees before the court in *Abood* authorizes agency shops to impose a requirement for payment of a "service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative . . ." Mich. Comp. Laws § 423.210(1)(c). The Supreme Court noted that nothing in the statute required employees to espouse the cause of unionism or participate in union affairs. *Abood v. Detroit Bd. of Educ., supra* at 212. Earlier cases had established the principle with regard to the private sector that

---

[4]*Cf. Good v. Associated Students,* 86 Wn.2d 94, 542 P.2d 762 (1975) where this court held that membership in the student organization at the University of Washington could not be required, but that payment of fees for proper university activities could.

[T]he requirement for financial support of the collective–bargaining agency by all who receive the benefits of its work . . . does not violate . . . the First . . . Amendment.

*Railway Employees' Dep't v. Hanson,* 351 U.S. 225, 238, 100 L. Ed. 1112, 76 S. Ct. 714 (1955) (union shops do not violate First Amendment). *See also International Ass'n of Machinists v. Street,* 367 U.S. 740, 6 L. Ed. 2d 1141, 81 S. Ct. 1784 (1961).

Holding the *Hanson* rationale equally applicable to mandatory contributions by government employees, the court in *Abood* said:

To be required to help finance the union as a collective–bargaining agent might well be thought . . . to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in *Hanson* and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress.

. . .
. . . Thus, insofar as the service charge is used to finance expenditures by the Union for the purposes of collective bargaining, contract administration, and grievance adjustment, those two decisions of this Court appear to require validation of the agency–shop agreement before us.

(Footnote omitted.) *Abood v. Detroit Bd. of Educ., supra* at 222, 225–26. Although the Michigan statute requires payment of a "service fee" and RCW 41.06.150 requires what is termed "membership", we find that the requirements of the two statutes are substantively identical and hold that RCW 41.06.150 does not violate employees' First Amendment freedom of association.

Plaintiff also contends the six engineers' First Amendment freedom of speech is violated by the Federation's use of collected dues for political purposes. There is, however, a publicized, "readily accessible" procedure for refund of

monies which would otherwise be used for political purposes to which an employee objects. Finding of fact No. 16. In *Abood,* the Supreme Court speaks with approval of such internal union mechanisms for dealing with the political expenditure problem. *Abood v. Detroit Bd. of Educ., supra.* There is no showing that the Federation will not honor this procedure.

Plaintiff next contends the 1973 amendments impair the six engineers' rights to free exercise of their religion. We must disagree, for the statute carefully protects those rights. It expressly provides for payments by an employee in a manner that would

> be in harmony with his individual conscience, an amount of money equivalent to regular union dues minus any included monthly premiums for union sponsored insurance programs, and such employee shall not be a member of the union but shall be entitled to all the representation rights of a union member.

RCW 41.06.150.

Plaintiff's final contention is that the 1973 amendments violate the rights of the six engineers to equal protection. We find this argument also without merit. All persons similarly situated with the engineers are similarly treated. *Moran v. State,* 88 Wn.2d 867, 568 P.2d 758 (1977). The amendments permit all employees in the collective bargaining unit to discharge their "membership" obligations by the same payments. All employees equally benefit from those payments in the improvement of the terms and conditions of their employment, regardless of whether they are full union members or merely "payment" members.

Nor has there been a showing the payment requirement is not rationally related to a legitimate state end. The requirement is neither arbitrary nor capricious. Plaintiff acknowledges as much by conceding that the payments are fair and that the engineers are willing to make them.

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.