[No. 47441–9.   En Banc.   June 16, 1983.]

LEON G. GRANT, *Appellant,* v. JOHN SPELLMAN
(RANDALL REVELLE*), ET AL,
*Respondents.*

*Randall Revelle was substituted as party defendant for John Spellman pursuant to RAP 3.2(f) as successor King County Executive.

*Peter Greenfield* and *George Cleve Haynes* of the American Civil Liberties Union Foundation, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Richard W. Elliott, Senior Deputy,* for respondents Spellman, et al.

*Hafer, Cassidy & Price* and *John Burns,* for respondent Public Safety Employees Union, Local 519.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Assistant,* for respondent Public Employment Relations Commission.

*Robert W. Nixon* and *David R. Duncan* on behalf of General Conference of Seventh–Day Adventists, amici curiae for appellant.

*David T. Bryant, John C. Scully,* and *Bruce N. Cameron* on behalf of the National Right To Work Legal Defense

Foundation, Inc., and *Jerry B. Edmonds* and *Michael Farris,* amici curiae for appellant.

DOLLIVER, J.—In *Grant v. Spellman,* 96 Wn.2d 454, 635 P.2d 1071 (1981), the Washington Supreme Court held RCW 41.56.122(1) requires a public employee belong to a church or religious body to claim a union dues exemption based upon religious beliefs. The court ruled RCW 41.56-.122(1), as interpreted, does not violate the free exercise of religion clause of the First Amendment. Plaintiff Grant petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court granted plaintiff's petition for a writ of certiorari, vacated the opinion of this court, and remanded the case to us "for further consideration in light of *Larson* v. *Valente,* [456 U.S. 228, 72 L. Ed. 2d 33, 102 S. Ct. 1673 (1982)]." *Grant v. Washington Pub. Empl. Relations Comm'n,* 456 U.S. 955, 72 L. Ed. 2d 479, 102 S. Ct. 2028 (1982).

Leon G. Grant is employed as a sergeant in the King County Department of Public Safety. King County, a "public employer" under RCW 41.56.030, and Public Safety Employees Local 519 (Local 519) are parties to a collective bargaining agreement which sets the terms and conditions of employment for certain employees of the Public Safety Department. Sergeant Grant is included in the bargaining unit represented by Local 519.

The parties' contract includes a union security clause, which requires members of the bargaining unit affected by the agreement to tender periodic payments to the union as a condition of continued employment. The clause does not require anyone to become a member of Local 519. There are no requirements which might flow from membership, nor must a member of the bargaining unit affirm or adopt union policies. All that is required is for an employee to pay a share of the costs incurred by the union in representing the bargaining unit, in this instance $11.20 per month. Local 519 has a dues rebate procedure to ensure nonmembers are not required to support activities unrelated to the

costs of collective bargaining.

The union security clause provides:

> [E]mployees with a bona fide religious objection to union membership and/or association based on the bona fide tenents or teachings of a church or religious body of which such employee is a member shall not be required to tender those dues or initiation fees to the Union . . .

The clause further provides employees with such religious objections may pay to a charity an amount equal to the required assessment in lieu of payment to the union.

Plaintiff asked Local 519 to rule he came within the exemption to the union security clause. Local 519 rejected the request on grounds that plaintiff's objection to tendering money to the union was not based on the bona fide religious tenets or teachings of a church or religious body. Plaintiff then petitioned the Public Employment Relations Commission (PERC) to direct Local 519 to grant his request. In denying the petition, PERC stated plaintiff's "objections are based on personal beliefs" and were thus outside the scope of the exemption found in the collective bargaining agreement.

Although it does seem to suggest adherence to our earlier interpretation of RCW 41.56.122(1) would violate the establishment clause, *see Larson v. Valente, supra,* the statement on remand of this case by the United States Supreme Court is delphic at best. Furthermore, beyond agreement that some further consideration of the case by this court was mandated, the opinions of the parties as to what that consideration should entail were varied and contradictory. Rather than perhaps go astray in the uncertainties of the First Amendment and engender further confusion, *see Thomas v. Review Bd.,* 450 U.S. 707, 67 L. Ed. 2d 624, 101 S. Ct. 1425 (1981) (Rehnquist, J., dissenting), we prefer to decide the case on other grounds.

■ The duty of the court is to ascertain and give effect to the intent and purpose of the Legislature, as expressed in the act. *In re Lehman,* 93 Wn.2d 25, 27, 604 P.2d 948 (1980). Courts presume legislatures to act with integrity

and with a purpose to keep within constitutional limits. *Tembruell v. Seattle*, 64 Wn.2d 503, 392 P.2d 453 (1964). When interpreting a statute, every presumption favors the validity of an act of the Legislature, all doubts must be resolved in support of the act, and it will not be declared unconstitutional unless it clearly appears to be so. *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964). 2A C. Sands, *Statutory Construction* § 45.11 (4th ed. 1973). If, among alternative constructions, one or more would involve serious constitutional difficulties, the court, without doing violence to the legislative purpose, will reject those interpretations in favor of a construction which will sustain the constitutionality of the statute. *State ex rel. Morgan v. Kinnear*, 80 Wn.2d 400, 402, 494 P.2d 1362 (1972).

With these principles before us we examine the statute in question. RCW 41.56.122(1) states:

> [A]greements involving union security provisions must safeguard the right of nonassociation of public employees based on bona fide religious tenets or teachings of a church or religious body of which such public employee is a member.

It is apparent RCW 41.56.122(1) is susceptible of two meanings. If read conjunctively, it would require a public employee to belong to a church or religious body to claim a union dues exemption based on religious beliefs. If read disjunctively, the statute would allow a person to claim the union dues exemption based on either (1) bona fide religious tenets, or (2) teachings of a church or religious body of which the person is a member. See dissent of Mary Ellen Krug, Chair of The Public Employment Relations Commission, In the Matter of the Petition of Leon Grant, Decision 591–A PECB.

While plaintiff's beliefs are personal, the evidence is persuasive they are also deeply held religious beliefs. *Grant v. Spellman, supra* at 457. Under a disjunctive reading of RCW 41.56.122(1), plaintiff would be authorized to pay an amount equal to his union dues to a charity as provided by the statute. Bearing in mind our duty to uphold the consti-

tutionality of a statute if possible, we hold plaintiff does come under the terms of RCW 41.56.122(1) and that Local 519, either by rewriting or reinterpreting the union security clause in the agreement between it and King County, must allow him to contribute his union dues to a charity.

Two further comments: (1) Whether an individual is to be granted an RCW 41.56.122(1) exemption from a union security agreement is dependent upon proof of the bona fide religious beliefs of the individual or the religious group. *See Larson v. Valente,* 456 U.S. at 255 n.30. The exemption is not automatic. (2) While there is some legislative history to the effect that an exemption based on personal religious beliefs was not contemplated by the Legislature, see brief of amici curiae on behalf of General Conference of Seventh–Day Adventists; Public Employees Collective Bargaining Comm., *1969–71 Biennial Report* 4 (2d rev. ed. 1971), we find it not to be controlling, particularly in view of our comments as to the presumption favoring the validity and constitutionality of legislative acts. If the Legislature does wish to distinguish between personal and denominational religious beliefs, it may, of course, amend the statute, although questions might arise as to the constitutionality of that action. *See Larson v. Valente, supra; Thomas v. Review Bd., supra; United States v. Seeger,* 380 U.S. 163, 13 L. Ed. 2d 733, 85 S. Ct. 850 (1965). *See also Lemon v. Kurtzman,* 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971).

The decision of this court in *Grant v. Spellman, supra,* is vacated. The judgment of the trial court is reversed. Plaintiff is entitled to an exemption under the terms of RCW 41.56.122(1).

ROSELLINI and DORE, JJ., concur.

WILLIAMS, C.J. (concurring specially)—I agree with the majority's uniform extension of religious exemptions to employees regardless of religious affiliation. I believe that such a conclusion is compelled by both federal and state

constitutional law.

In its original opinion this court interpreted RCW 41.56-.122 as only granting religious exemptions from union security clauses to persons affiliated with churches or other recognizable religious groups. *Grant v. Spellman,* 96 Wn.2d 454, 635 P.2d 1071 (1981) (*Grant* I). Noting this interpretation and the distinction being made between persons whose religious beliefs spring from such affiliation and persons whose beliefs exist outside of any organized group, the United States Supreme Court reversed and remanded *Grant* I for action consistent with *Larson v. Valente,* 456 U.S. 228, 72 L. Ed. 2d 33, 102 S. Ct. 1673 (1982). *See Grant v. Washington Pub. Empl. Relations Comm'n,* 456 U.S. 955, 72 L. Ed. 2d 479, 102 S. Ct. 2028 (1982). It should be noted initially that *Valente* applies only to those laws interpreted as granting a preference to one class of religious beliefs and denying that same preference to other classes. *Valente,* at 252.[1] The United States Supreme Court was bound by this court's original interpretation of the statute. Thus, this court, by its own action, has brought this case squarely within the ambit of *Valente.* Yet, for fear of becoming lost in the "uncertainties of the First Amendment", the majority rejects the *Valente* analysis. Majority opinion, at 818. Rather than causing us to become mired in a First Amendment bog, *Valente* presents a sound and easily manageable basis upon which to decide this case. Moreover, this case presents First Amendment issues of paramount importance and should be addressed as such. Using the *Valente* analysis I would reach the same result as the majority. I therefore concur only in that result.

In *Valente,* the Minnesota Legislature enacted legislation regulating the collection of charitable contributions. The law contained rather rigorous registration and reporting requirements. Minnesota later granted religious

---

[1]Statutes interpreted as affording uniform benefits to all religions are tested for constitutionality under the 3–part test of *Lemon v. Kurtzman,* 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971).

organizations receiving at least 50 percent of charitable contributions from members an exemption from these requirements. Members of the Holy Spirit Association for the Unification of World Christianity (Unification Church), which received far less than 50 percent of its contributions from members, sued claiming that the legislation violated the establishment clause of the First Amendment. In deciding the issue, the United States Supreme Court noted: "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Valente,* at 244. Further, the establishment clause is so inextricably intertwined with free exercise that equality of exercise is impossible in an atmosphere of official denominational preference. As such, it has been long established that no state may pass laws which aid one religion or prefer one religion over another. *Everson v. Board of Educ.,* 330 U.S. 1, 91 L. Ed. 711, 67 S. Ct. 504, 168 A.L.R. 1392 (1947). Since this freedom is so important, the Court in *Valente* held that governing bodies must show that laws which distinguish between religions are necessary to serve a compelling governmental interest and that the statute is narrowly drawn to achieve that end. *Valente,* at 246–47 (citing *Widmar v. Vincent,* 454 U.S. 263, 269–70, 70 L. Ed. 2d 440, 102 S. Ct. 269 (1981)). *See also State v. Meacham,* 93 Wn.2d 735, 612 P.2d 795 (1980). Indeed in religious exemption cases there must be a close fit between the preference and the interest. *Valente,* at 247. These same principles should apply in a labor setting.

In addressing the interests advanced by regulating labor union operations and religion, a court must engage in a 2–step process. First, it must determine the legitimacy of union security clauses and secondly determine the propriety of allowing religious exemptions from these clauses. *See Association of Capitol Powerhouse Eng'rs v. State,* 89 Wn.2d 177, 180, 570 P.2d 1042 (1977) and *Grant* I, at 461.

In this first step, courts have relied upon *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 52 L. Ed. 2d 261, 97 S. Ct. 1782 (1977). In *Abood,* the Court noted that union

security clauses foster industrial peace and stabilize labor–management relations. *Abood,* at 219. Further, such clauses have been found to avoid the confusion which so often results from attempts to enforce two or more collective bargaining agreements with differing terms. Because of these benefits, according to *Abood,* there exists a compelling interest for allowing these clauses. Thus, the United States Supreme Court has held that requirement of financial support of a collective bargaining agency by all who receive the benefits of its work does not violate the First Amendment. *Railway Employes' Dep't v. Hanson,* 351 U.S. 225, 238, 100 L. Ed. 1112, 76 S. Ct. 714 (1956).

The recognition that states have a compelling interest in union security clauses does not mean that we should not recognize the equally compelling nature of allowing exemptions based upon religion. Even in its first decision in *Grant,* this court upheld religious exemptions for church members. Also, as I originally stated in dissenting in *Grant* I, RCW 41.56.122(1) evinces our Legislature's intent to require employers to "make reasonable accommodation to the religious beliefs of employees." *Grant* I, at 463 (Williams, J., dissenting) (citing *Yott v. North Am. Rockwell Corp.,* 501 F.2d 398, 403 (9th Cir. 1974)).

Accommodating religion was also recognized by the United States Supreme Court in *Sherbert v. Verner,* 374 U.S. 398, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963). There, in reversing a state's decision on rights to unemployment benefits, the Court held that states must modify unemployment compensation laws in order to accommodate the needs of persons religiously opposed to working on nontraditional sabbaths. *Sherbert* has been read by one commentator as standing for the proposition that "*failure to accommodate religion when the government could substantially achieve its legitimate goals while granting religious exemptions [results in] hostility toward religion rather than [epitomizing] the essence of neutrality.*" (Footnote omitted.) L. Tribe, *American Constitutional Law* 852 (1978). Based upon *Sherbert* then, this court

should agree that the First Amendment commands the State to be vigilant in protecting the freedom of religion.

Accommodation clauses are in no way diminished when used in concert with union security clauses. Granting exemptions from security ·clauses serves the same ends as the clauses themselves. With such provisions employees are not placed in a situation of having to choose between religious beliefs and employment as in *Sherbert*. This unburdening of religious conscience can serve only to enhance and stabilize employer–employee relationships. Similarly, such exemptions "foster industrial peace", an interest held compelling in *Abood*. Because of these benefits, any decision striking down religious exemptions would amount to hostility toward religion.

But, in this case we are not to merely determine whether exemptions are compelling. Rather we are to determine whether the County can show a compelling interest for denying religious exemptions to nonchurch members. In its brief, the County offers no suggestions as to the interests it seeks to protect. However, it is arguable that the County has an interest in avoiding the administrative burden of processing more numerous requests for the exemption and in avoiding spurious requests. These added burdens, whether real or imagined, should not affect the rights of the appellant in this case. The Public Employment Relations Commission (PERC) has already accepted the sincerity of his religious beliefs. As for any future burden, PERC is free to require would–be users of the exemption to make a factual showing of the legitimacy of beliefs.

Such a requirement of proof of true religious sentiments was aptly handled by the court in *United States v. Kuch,* 288 F. Supp. 439 (D.D.C. 1968). There, the defendant, in a drug possession case, claimed to be an ordained minister of the Neo–American Church. Members of the "church" were supposedly allowed to use LSD, marijuana and other "consciousness expanding" substances. She therefore moved for dismissal of all criminal charges. In determining whether the defendant asserted true religious beliefs, the court

stated:

> Obviously this question is a matter of delicacy and courts must be ever careful not to permit their own moral and ethical standards to determine the religious implications of beliefs . . .
> *Subtle and difficult though the inquiry may be, it should not be avoided for reasons of convenience. . . .* In a complex society . . . those who seek immunity . . . on religious grounds must at the very least demonstrate adherence to ethical standards and a spiritual discipline.

(Italics mine.) *Kuch,* at 443–44.

These same principles can be applied by PERC. Moreover, in addressing similar arguments against exemptions for religious beliefs, the Court in *Sherbert* stated: "[E]ven if the possibility of spurious claims did threaten to dilute the fund . . ., it would plainly be incumbent upon the [governing body] to demonstrate that no alternative forms of regulation would combat such abuses". *Sherbert,* at 407. In this case the County offers no such alternatives.

Further, this requirement of additional factfinding was held not to be insurmountable by the Court in *Valente.* In holding that Minnesota must grant an exemption to the Unification Church, the Court noted: "Nothing in our opinion suggests that appellants could not attempt to compel the Unification Church to register under the Act . . . and put the Church to the proof of its bona fides as a religious organization. . . . [N]othing . . . disables the State from denying exemption . . . to persons or organizations proved to have engaged in frauds upon the public." *Larson v. Valente,* 456 U.S. 228, 255 n.30, 72 L. Ed. 2d 33, 102 S. Ct. 1673 (1982). Also, speculative arguments concerning possible administrative burdens should not be used to justify a denial of individual rights. It is well settled that constitutional protections cannot be denied for administrative expediency. *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972).

This court should therefore conclude that the County has failed to demonstrate a compelling need to deny the appellant an exemption under RCW 41.56.122 and has thus vio-

lated the establishment clause. Accordingly, I would hold that based on *Valente* the appellant cannot be denied a religious exemption.

■ Apart from *Valente,* this court is also compelled by our own constitution to extend the exemption to the appellant in this case. In instances where state constitutional language is substantially different from federal constitutional language, this court has recognized the efficacy of granting relief based upon independent state grounds. *See State v. White,* 97 Wn.2d 92, 108, 640 P.2d 1061 (1982). *See also PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 81, 64 L. Ed. 2d 741, 100 S. Ct. 2035 (1980); *Cooper v. California,* 386 U.S. 58, 62, 17 L. Ed. 2d 730, 87 S. Ct. 788 (1967). No lesser protection is available in cases of religious freedom. Unlike the federal constitution, Const. art. 1, § 11 provides, in relevant part:

> Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and . . . *[n]o religious qualification shall be required for any public office or employment* . . .

(Italics mine).

■ As a deputy sheriff, the appellant is most definitely within the public employ. As this court originally interpreted RCW 41.56.122, to continue in that employment, the appellant would have been required to denounce his religious beliefs either by joining some established organization or by giving up his beliefs altogether. Either of these alternatives would constitute a denial of the absolute freedom of conscience guaranteed in our own constitution. Moreover, since continued employment with the County is conditioned upon union membership, the County would also be placing a religious qualification upon employment in violation of Const. art. 1, § 11. Such a violation cannot be allowed to stand. Even under the federal constitution, which outlines the minimum protection available to individuals, persons "may not be compelled to choose between the exercise of a First Amendment right and participation

in an otherwise available public program." *Thomas v. Review Bd.,* 450 U.S. 707, 716, 67 L. Ed. 2d 624, 101 S. Ct. 1425 (1981). The majority's new holding in this case prevents the necessity of such a choice.

This new result not only comports with *Valente* and our own constitution, but is also in keeping with established concepts of statutory construction. As the majority notes, we are to presume that the Legislature acted "with integrity and with a purpose to keep within constitutional limits." Majority opinion, at 818 (citing *Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964)). Stemming from the presumption of legislative integrity is the presumption that statutes are constitutional. *Seattle v. Shepherd,* 93 Wn.2d 861, 865, 613 P.2d 1158 (1980). This court has used these two presumptions to authoritatively construe statutes attacked as being constitutionally invalid. *See State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 601 n.3, 512 P.2d 1049 (1973) (citing *United States v. 12 200–ft. Reels,* 413 U.S. 123, 37 L. Ed. 2d 500, 93 S. Ct. 2665 (1973)); *State v. Regan,* 97 Wn.2d 47, 640 P.2d 725 (1982). Therefore, though it is arguable that the County's failure to show a compelling interest for denying the appellant an exemption renders the statute invalid, we need not strike down this statute. Under the principle of authoritative construction, this court may legitimately construe RCW 41.56.122 in such a manner as to cure any constitutional infirmity. The majority's reassessment of this case provides such a cure. I therefore concur.

STAFFORD, UTTER, BRACHTENBACH, and PEARSON, JJ., concur with WILLIAMS, C.J.

DIMMICK, J. (concurring)—I agree with Chief Justice Williams' concurrence except for his discussion of our state constitution (concurrence, at 826) which I feel is unnecessary.