[No. 62282-5.    En Banc.    December 21, 1995.]

LOCAL 2916, IAFF, *Respondent*, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION *Appellant*.

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 1789, *Respondent*, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Spencer W. Daniels, Assistant,* for appellant.

*Barry E. Ryan,* for respondent.

ALEXANDER, J. — The question presented in this case is whether the Public Employment Relations Commission (PERC) has jurisdiction to rule on a worker's complaint that a labor organization's use of the employee's agency fee is an unfair labor practice, when the worker's challenge is based on other than religious grounds. Because it is settled law that PERC has been given authority by the Legislature to only determine whether an alleged unfair labor practice affects a right protected by statute, and because we conclude that there has been no showing that the only relevant statutorily protected right, "the right of nonassociation of public employees based on bona fide religious tenets," RCW 41.56.122(1), has been affected, let alone violated, we affirm the trial court's ruling dismissing, for want of jurisdiction, the unfair labor practice complaints that are the subject of this appeal.

The cases before us originated when separate unfair labor practice complaints were filed with PERC by employees of two public entities located in Spokane County. In their complaints, each of the employees alleged that a

labor organization improperly used a portion of the so-called "agency fees" that the employees were required to pay to the union for activities that were unrelated to representation of employees under the collective bargaining agreements.[1]

Two of the complaints were filed by James and Janice Panknin, employees of Spokane County Fire Protection District 9 (District). *Spokane County Fire Dist. 9*, Decs. 3773-A & 3774-A (PERC 1992). Their complaints were precipitated when the membership of their union, Local 2916 of the International Association of Fire Fighters, voted to impose a special, one-time assessment on bargaining unit members in order to establish a "bargaining unit member assistance program." Compl. Charging Unfair Labor Practices, Statement of Facts at 3. The purpose of this program was to provide financial assistance to employees who "lost income due to discipline by the District and for employees suffering a wide range of problems." Compl. Charging Unfair Labor Practices, Statement of Facts at 4. The Panknins objected to the assessment, refused to pay it, and eventually resigned their memberships in the union. Local 2916 then threatened to invoke a bargaining agreement provision that permitted the union to request that the District discharge the Panknins for failing to pay the assessment. The Panknins then paid the assessment under protest, and filed their complaints with PERC alleging that the union's requirement that the Panknins pay the assessment constituted an unfair labor practice because the assessment contributed to union activities that were unrelated to collective bargaining or representation.

---

[1]An agency fee is a provision generally found in an "agency shop" clause, or "union security provision," of a collective bargaining agreement. Under such a clause or provision, which is specifically permitted, but not required under RCW 41.56.122(1), employees in a bargaining unit are required to either join the union or pay to the union an "agency fee," which is equivalent to union dues. The purpose of such a provision is to compensate the union for its efforts in representing nonunion employees in collective bargaining, contract administration and grievance processes. *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 224-26, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977) (agency shop provision held constitutional, insofar as union uses charges for collective bargaining purposes and not political purposes).

The other complainant is George Wickholm, a Spokane International Airport employee. *Spokane Airport Bd.*, Dec. 4153-A (PERC 1993). The incident that triggered Wickholm's complaint occurred after the union to which he belonged, Local 1789 of the International Association of Fire Fighters, "started to enforce a tee shirt regulation that the employer and union had established as an optional part of the [bargaining agreement]." Compl. Charging Unfair Labor Practices, Statement of Facts at 3. Wickholm claims that under this newly enforced dress code, employees were required to wear a particular style of tee shirt, which they had to purchase at their own expense. Wickholm objected, but was informed by another union member that he was required to follow the dress code. Wickholm then notified the union that he was resigning from the union. He also requested that the monthly agency fee that he paid to the union be adjusted to reflect only the actual cost of representation. After the President of Local 1789 informed Wickholm that the Executive Board had voted to assess an agency fee that was equal to the amount of union dues, Wickholm filed a complaint with PERC, contending that it was an unfair labor practice for the union to require him to pay a monthly agency fee in that amount.

At each of the hearings before PERC on the aforementioned complaints, the unions asserted an affirmative defense that PERC lacked jurisdiction to hear the complaint. In each case, a PERC hearing examiner rejected that defense and found, as a matter of law, that the union had committed unfair labor practices. *See Spokane Airport Bd.* at 5; *Spokane County Fire Dist. 9* at 4. PERC upheld the examiners' rulings on review. *Spokane Airport Bd.* at 9; *Spokane County Fire Dist. 9* at 10-11.

Local 2916 and Local 1789 appealed the adverse ruling to the Spokane County Superior Court, which consolidated the appeals. The unions together moved for summary judgment, again arguing that PERC lacked jurisdiction to hear the complaints. Specifically, they claimed that PERC was

without jurisdiction to hear these challenges to agency fees because the challenges were not based on religious grounds.[2] The superior court agreed with the unions and granted their motion, reversing PERC's decisions. PERC then sought direct review by this court, and we accepted review.[3]

■■ Although this court generally accords great deference to PERC's interpretation of the law it administers, *Public Employment Relations Comm'n v. City of Kennewick*, 99 Wn.2d 832, 842, 664 P.2d 1240 (1983), as an administrative agency, PERC has no more authority than is granted to it by the Legislature. *See Kaiser Aluminum & Chem. Corp. v. Department of Labor & Indus.*, 121 Wn.2d 776, 780, 854 P.2d 611 (1993). Determining the extent of that authority is a question of law, which is a power ultimately vested in this court. RCW 34.05.570(3)(b) (a reviewing court may reverse an order of an administrative agency that exceeds its jurisdiction).

Among the powers that the Legislature has given to PERC is the authority to "prevent any unfair labor practice and to issue appropriate remedial orders." RCW 41.56.160(1). Unfair labor practices are defined by statute. *See* RCW 41.56.140, .150. The latter statute, RCW 41.56.150(1), defines unfair labor practices by bargaining

---

[2]The core of the Respondents' position is summarized as follows: "Only RCW 41.56.122(1) and WAC Chapter 391-95 deal with exemptions from the legal and contractual obligation to pay dues where there is a union security clause [in the bargaining agreement]. Both the statute and the WACs limit that exception to religious reasons. As a result, *even if*, arguendo, the complainants' First Amendment rights were alleged to have been violated by the Locals, PERC never had jurisdiction to even address this supposed unfair labor practice. The complainants were, and are, required to take such claims to either a Superior Court or a U.S. Federal District Court for determination, as did both plaintiffs in *Abood* and *Hudson*, . . . the decisions cited and relied on by PERC." Br. of Resp't at 13.

[3]PERC contends that it has standing to appeal the ruling of the superior court because the superior court reached only the issue of PERC's jurisdiction. *See Kaiser Aluminum & Chem. Corp. v. Department of Labor & Indus.*, 121 Wn.2d 776, 782, 854 P.2d 611 (1993) (one exception to the general rule that a quasi-judicial agency does not have authority to appeal court decisions reversing the agency's decision is when the appeal involves the integrity of the agency's decision-making process). The Respondents do not contest PERC's authority to maintain this appeal.

representatives, and provides that it is an unfair labor practice for a bargaining representative to interfere with "rights guaranteed by this chapter." Insofar as union security provisions, or "agency fees," are concerned, RCW 41.56.122(1) defines the right of employees that must be safeguarded in collective bargaining agreements, in part, as follows:

> agreements involving union security provisions must safeguard the right of nonassociation of public employees *based on bona fide religious tenets or teachings of a church or religious body of which such public employee is a member.* Such public employee shall pay an amount of money equivalent to regular union dues and initiation fee to a nonreligious charity . . . .

RCW 41.56.122(1) (emphasis added).

■ PERC assigns error to the superior court's order granting summary judgment and reversing PERC's determination that it had jurisdiction to hear the complaints. Our review of PERC's orders is limited to the administrative record, without regard to the trial court decision. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

PERC claims here that the superior court wrongly concluded that it was without jurisdiction to hear the Panknins' and Wickholm's complaints challenging, on grounds other than a religious objection, the requirement that the complainants pay the full amount of their agency fees.

The fundamental underpinning of PERC's position is that, in addition to the express authority granted to PERC by RCW 41.56.122(1) to protect employees against a union's use of agency fees for purposes that offend an employee's religious freedom, PERC has implied authority to assure that agency fees are not used by a labor organization in a way that violates any constitutionally protected

rights of the employees.[4] PERC contends that this is so because "[t]hese rights are *implicit* in the statute permitting unions to contract for agency fee provisions." Br. of Appellant at 9 (emphasis added).

In making this assertion, PERC relies heavily on our decision in *Grant v. Spellman*, 99 Wn.2d 815, 819, 664 P.2d 1227 (1983) (*Grant* II). Br. of Appellant at 8-9, 20-21. PERC contends that *Grant* II requires this court to construe RCW 41.56.122(1) "in such a way as to avoid *any* constitutional difficulties." Br. of Appellant at 21 (emphasis added).

PERC misreads the breadth and scope of our decision in *Grant* II. As here, RCW 41.56.122(1) was the statute upon which the court focused in that case. Our central holding there was that in enacting the statute, the Legislature did not "distinguish between personal and denominational religious beliefs." *Grant* II, 99 Wn.2d at 820. Thus, in *Grant* II, we merely construed the statute to mean that a person could claim an exemption from union dues "based on either (1) bona fide religious tenets, or (2) teachings of a church or religious body of which the person is a member," avoiding what the court considered to be "serious constitutional difficulties." *Grant* II, 99 Wn.2d at 819. We did not, as PERC suggests, conclude that the scope of PERC's authority had expanded to decide agency fee challenges outside of the scope of the statutory religious exemption.

PERC also incorrectly interprets the effect on this case of the decisions of the United States Supreme Court in *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), and *Chicago Teachers Union, Local 1 v. Hudson*, 475 U.S. 292, 106 S. Ct. 1066, 89 L. Ed. 2d 232 (1986). In *Abood*, nonunion employees attempted to prevent a labor organization's use of the employees' union dues for political purposes that did not relate to the organization's duties as exclusive bargaining representa-

---

[4]The dissent faults the majority for what it claims is our "unwarranted" implied authority analysis. Dissenting Op. at 384. In our judgment, however, such an analysis is not only warranted, it is necessary because PERC's appeal is based on a theory of implied authority.

tive. The United States Supreme Court ruled there that such a use of union dues violated the employees' freedom of association guaranteed by the First Amendment. In *Hudson*, the Court merely clarified the procedures necessary to protect the right recognized in *Abood*.

■ ■ Although we agree with PERC that these decisions have expanded the constitutional protection that employees have with respect to the way agency fees are used, beyond that which is provided by RCW 41.56.122(1), we do not agree that these opinions support a conclusion that whenever an employee challenges an agency fee provision on First Amendment grounds, the challenge, by necessary implication, falls within the jurisdiction of PERC. This is so because PERC's responsibility to prevent unfair labor practices, with respect to collective bargaining agreements involving a "security provision," is limited by RCW 41.56.150(1) to only those rights protected by statute. Thus, there is no room for implied additional jurisdiction. *See State ex rel. Eastvold v. Maybury*, 49 Wn.2d 533, 539, 304 P.2d 663 (1956) (quoting *State ex rel. State Bd. of Medical Examiners v. Clausen*, 84 Wash. 279, 282, 146 P. 630 (1915) ("[W]here a . . . board is charged by law with a specific duty, and the means for its performance are appointed by law, there is no room for implied powers, and the means appointed must be followed, however inadequate may be the result.")), *cited with approval in Ortblad v. State*, 85 Wn.2d 109, 117-18, 530 P.2d 635 (1975).

The dissent contends that PERC's authority to hear these cases stems from RCW 41.56.040, a contention that was not briefed or advanced by PERC at any stage of the litigation preceding this appeal or on appeal. Although RCW 41.56.040 provides that public employees have the right to be free of interference, restraint, coercion, or discrimination in their efforts to "organize and designate representatives of their own choosing for the purpose of collective bargaining," the statute makes no reference to PERC's authority. We find the dissent's reliance on this statute unpersuasive, disagreeing with its view that the

statute "expressly grants PERC adjudicatory authority" over nonreligious controversies concerning agency fees. Dissenting Op. at 384. It is a fact that the public employees here were not engaged in organizing or designating representatives for the purpose of collective bargaining. Thus, the right established by RCW 41.56.040 has no application to these cases.

Our conclusion that PERC is without jurisdiction to hear these cases should not be viewed as any reflection on the merits or demerits of the complainants' cases against the union. Neither do we suggest that they are without an adequate forum in which to address their grievances against the unions to which they previously belonged. The issue we have addressed here relates only to whether PERC is the appropriate forum to decide these challenges to agency fees on nonreligious grounds, given the scope of PERC's jurisdiction, as defined by the Legislature. As noted above, the Legislature has granted PERC limited authority. It was not created as a court of general jurisdiction, and thus it has no authority to decide whether an act is an unfair labor practice unless the right that is affected is guaranteed by statute. If we were to conclude otherwise, we would be effectively amending the statute to afford PERC greater power that it was given by the Legislature. Because such a result is unnecessary, unwise, and unsupportable under the statute, we affirm the decision of the trial court granting summary judgment in both cases.

Affirmed.

DURHAM, C.J., SMITH, JOHNSON, MADSEN, and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.

DOLLIVER, J. (dissenting) — As the majority rightly points out, the authority of the Public Employment Relations Commission (PERC) extends no further than those powers conferred by the Legislature in the agency's enabling statute, RCW 41.56. *See Kaiser Aluminum & Chem. Corp. v. Department of Labor & Indus.*, 121 Wn.2d 776,

780, 854 P.2d 611 (1993). The majority is also correct in asserting the Legislature has limited PERC's adjudicatory authority to the protection of rights guaranteed by the statute. *See* RCW 41.56.040, .150. Inexplicably, however, the majority has sought PERC jurisdiction in this case through an implied authority analysis of the agency fee provision, RCW 41.56.122(1). I dissent. The majority's foray into implied authority analysis is unwarranted. The statute contains express authority for PERC to hear the claims in this case.

By enacting RCW 41.56 the Legislature has provided statutory safeguards for public employees' constitutional right of association, protected in the labor relations context as the right to organize and bargain collectively. RCW 41.56.040. To this end, the statute expressly grants PERC adjudicatory authority to assure observance of these safeguards by unions and employers:

> No public employer, or other person, shall directly or indirectly, interfere with, restrain, coerce, or discriminate against any public employee or group of public employees in the free exercise of their right to organize and designate representatives of their own choosing for the purpose of collective bargaining, or in the free exercise of any other right under this chapter.

RCW 41.56.040.

The right of association encompasses freedom not only to organize and bargain collectively, but also to refrain from that activity. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234-35, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977). One method by which the Legislature has specifically ensured the right of association of public employees is by prohibiting closed shops. RCW 41.56.122(1). Thus, compulsion of a public employee to join a labor union must constitute an unfair labor practice under the statute. *See* RCW 41.56.150(1). At the same time, the Legislature has endeavored to encourage union activity and prevent free riders — nonunion employees benefiting from union representation — by permitting agency fees. *Association of*

*Capitol Powerhouse Eng'rs v. State*, 89 Wn.2d 177, 180-81, 570 P.2d 1042 (1977); *see* RCW 41.56.122(1).

As the United States Supreme Court has announced, an agency fee imposed in excess of the costs of collective bargaining will violate an employee's associational rights — those rights expressly protected by PERC — by compelling his or her association and essentially creating a closed shop. *See Chicago Teachers Union, Local 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292, 106 S. Ct. 1066, 89 L. Ed. 2d 232 (1986); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977). This court has indicated its adoption of the standards enunciated by the United States Supreme Court to protect workers' associational rights from inappropriate agency fees. *Association of Capitol Powerhouse Eng'rs*, 89 Wn.2d at 187-88 (concluding *Abood* controlled freedom of association challenge to agency fees under the state civil service law). In *Abood*, the Supreme Court balanced the competing associational rights of union and nonunion employees to hold the imposition of agency fees was constitutionally permissible as long as nonunion employees retained the right to prevent the use of those fees for political purposes unrelated to exclusive bargaining representation. *Abood*, 431 U.S. at 234. The Court in *Hudson* explained the procedures constitutionally necessary to meet *Abood*'s substantive demands:

> We hold today that the constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending.

*Hudson*, 475 U.S. at 310. Most importantly here, the *Hudson* procedures must be in place before imposition of an agency fee to assure potential objectors receive sufficient information regarding the union's use of the fees. *Hudson*, 475 U.S. at 306.

In the present case, PERC applied the *Hudson* stan-

dards to claims that unions violated nonunion employees' associational rights through unfair agency fees and inadequate procedural safeguards. Regardless of the validity of the complainants' substantive challenges, the unions clearly failed to provide an adequate financial explanation of the fees and thus fell short of *Hudson*'s procedural requirements. Because the statute guarantees associational rights, PERC properly exercised its jurisdiction over these claims of infringement as unfair labor complaints.

In light of the plain language of PERC's enabling statute granting the agency authority over associational rights, the majority's denial of PERC jurisdiction over agency fee challenges is insupportable. First, the majority contends PERC lacks implied authority to prevent agency fees from violating *"any"* constitutional right. Majority at 381. But this implied analysis is unnecessary, as the statute expressly guarantees the right of association violated by unfair agency fees. Likewise, the issue here is not *"any"* right, but the subject of the statute, the right to organize.

Next, the majority focuses on the agency fee provision and the religion exemption as a limitation on PERC jurisdiction. Majority at 381. To the contrary, the agency fee provision represents an expansion of PERC authority to protect religious freedom where the statute otherwise restricts the agency's jurisdiction to associational rights. *See* RCW 41.56.122(1). Although the explicit religion exemption was necessary to allow PERC jurisdiction over religious challenges to agency fees, a similar provision explicitly outlining PERC jurisdiction over strictly associational challenges would be superfluous — the statute already grants PERC that authority.

Finally, the majority contends recognition of PERC authority over associational challenges to agency fees would constitute an amendment to the statute. Again, this assessment flows from the flawed premise that PERC lacked jurisdiction to protect associational rights. Rather than amend the statute to create a right to challenge agency fees, PERC merely applied the standards estab-

lished by the United States Supreme Court to protect associational rights from agency fees. PERC holds extensive authority to interpret its enabling statute and achieve legislative purposes, and the parties here do not deny the constitutional requirements of *Abood* and *Hudson* apply to Washington unions. *See Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975).

The majority's conclusion runs contrary to the very purposes of the statute. The removal of agency fee challenges from PERC jurisdiction frustrates the express legislative policy aims to provide efficient and uniform resolution of labor issues. *Public Util. Dist. 1 v. Public Employment Relations Comm'n*, 110 Wn.2d 114, 119, 750 P.2d 1240 (1988). This court has repeatedly articulated a preference for PERC jurisdiction to further these goals. *See Public Util. Dist. 1*, 110 Wn.2d at 119; *Municipality of Metro. Seattle v. Public Employment Relations Comm'n*, 118 Wn.2d 621, 633-34, 826 P.2d 158 (1992). Nor does the availability of trial relief for constitutional claims against agency fees provide adequate consolation for the denial of a PERC forum. By forcing public employees to seek relief for some agency fee complaints from a trial court instead of PERC's administrative system, the majority has imposed an unnecessary burden on the very subjects the statute intends to protect.

I would reverse the ruling of the trial court and remand for further proceedings.

GUY, J., concurs with DOLLIVER, J.