**Doris McDANIEL, Plaintiff-Appellee,**

v.

**ESSEX INTERNATIONAL, INC., a/k/a Essex Wire, a Michigan corporation, Defendant-Appellant,**

**and**

**International Association of Machinists, Local Lodge No. 982, Defendant-Appellant.**

**Nos. 81–1228, 81–1249, 81–1427 and 81–1446.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1982.

Decided Dec. 14, 1982.

Clinton J. Miller, III (argued), Highsaw & Mahoney, Washington, D.C., for defendants-appellants in Nos. 81–1228, 81–1446.

Lee Boothby (argued), Berrien Springs, Mich., for plaintiff-appellee in all cases.

William T. Hopkins, Jr. (argued), Gallucci & Hopkins, Fort Wayne, Ind., for defendants-appellants in Nos. 81–1249, 81–1427.

Gordon Quist, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for defendants-appellants in No. 81–1446.

Before LIVELY, MARTIN and WELLFORD, Circuit Judges.

LIVELY, Circuit Judge.

This is the second appeal in an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* in which the plaintiff established that she was discharged from employment because of her religion.

I.

Doris McDaniel is a member of the Seventh-day Adventist Church which teaches that its adherents should not belong to labor unions or support them financially. Her employer, Essex International, Inc. (Essex or the employer), has a collective bargaining agreement with Lodge No. 982, International Association of Machinists and Aerospace Workers (IAM or the union) which contains a union security clause. Ms. McDaniel was discharged by Essex at the request of IAM for refusing to pay dues to Lodge 982.

After being discharged Ms. McDaniel commenced this action. The district court, 509 F.Supp. 1055, granted summary judgment for both defendants, finding that Congress had previously determined that all employees covered by a collective bargaining agreement may be required to pay dues to a certified union and that the enactment of Title VII did not affect this obligation. On appeal this court reversed, holding that Title VII, as amended in 1972, requires an employer and a union to make an effort at reasonable accommodation to an employee's religious beliefs, practices and observances; and if unsuccessful, to demonstrate that it would impose an unreasonable hardship on the union and employer to do so. *McDaniel v. Essex International, Inc.,* 571 F.2d 338, 343–44 (6th Cir.1978). The case was re-

manded to the district court "to receive evidence and to determine therefrom whether any reasonable accommodation to the religious needs of the plaintiff may be made by Essex and IAM without undue hardship." *Id.* at 344.

Following remand the parties entered into a lengthy stipulation of facts. Thus, the following facts are undisputed:

(1) Both her employer and the union were aware of Ms. McDaniel's religious beliefs and desire for an accommodation.

(2) Prior to her discharge Ms. McDaniel offered to pay the equivalent of dues of a membership of IAM to a "non-sectarian non-union national charity."

(3) On the date of her discharge Ms. McDaniel wrote the president of Lodge 982 stating that she was not seeking any financial advantage and offering to "contribute to the proportionate cost of administration of peaceful collective bargaining with Essex Wire with the remainder of the normal dues to be given to a mutually-agreeable non-religious charitable fund."

(4) The union specifically rejected the accommodation suggested by the plaintiff, but stated that it would be willing to forego the requirement of union membership so long as Ms. McDaniel paid the normal union dues and fees.

(5) Upon receiving a demand from IAM that it discharge Ms. McDaniel for failure to join the union or pay dues, Essex sought a two-week delay in order to try to work out an accommodation. The union refused to agree to the delay and the plaintiff was discharged by Essex on December 28, 1972.

The district court concluded that Ms. McDaniel had established a prima facie case of discrimination, placing the burden on the defendants to show that each had made a good faith effort at accommodation which was unsuccessful and to demonstrate that they were unable to accommodate without undue hardship. The court then found that the union had made no attempt at accommodation and was liable under Title VII. The district court found that the employer's request for a delay was, under the circum-stances, a reasonable attempt at accommodation which was thwarted by the union's insistence on the plaintiff's immediate discharge. Looking further at the facts, however, the court concluded that Essex had failed to establish undue hardship.

II.

On appeal both Essex and the union argue that the accommodation requirement of Title VII violates the First Amendment prohibition against the establishment of religion. The union does not dispute the district court's finding that it made no attempt to accommodate Ms. McDaniel's religious beliefs. However, Essex contends that requiring it to accommodate Ms. McDaniel without the cooperation of the union burdened it with an undue hardship. We conclude that Title VII does not offend the establishment clause and that Essex has not demonstrated that it could not accommodate to Ms. McDaniel's religious needs without undue hardship.

A.

Title VII prohibits discrimination in employment practices, specifically making it unlawful for an employer to discharge any individual because of that person's religion. 42 U.S.C. § 2000e–2(a)(1). The prohibitions of the Act apply equally to unions, which are forbidden to interfere with employment opportunities because of a person's religion or "to cause or attempt to cause an employer to discriminate against an individual" in violation of the Act. 42 U.S.C. § 2000e–2(c). The specific portion of Title VII which the union attacks as unconstitutional is § 701(j), 42 U.S.C. § 2000e(j), which was added to the Act in 1972:

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

This court has previously upheld the constitutionality of § 701(j) and the EEOC regulation from which it was taken, 29 C.F.R. § 1605.1, promulgated in 1967. *Cummins v. Parker Seal Co.,* 516 F.2d 544 (6th Cir.1975), *aff'd by equally divided Court,* 429 U.S. 65, 97 S.Ct. 342, 50 L.Ed.2d 223 (1976), *vacated on other grounds unrelated to constitutionality and remanded for reconsideration,* 433 U.S. 903, 97 S.Ct. 2965, 53 L.Ed.2d 1087 (1977), *decided on remand,* 561 F.2d 658 (1977). The majority in *Cummins,* speaking through then Chief Judge Phillips, concluded that the requirement for an employer to accommodate the religious beliefs and practices of an employee does not offend the establishment clause. Judge Celebrezze filed a vigorous dissent. The issue in *Cummins* arose when an employee was required to work on his sabbath day.

Since our decision in *Cummins* several courts have considered cases involving members of the Seventh-day Adventist Church who refused on religious grounds to join a union or pay union dues. The courts in these cases have agreed with this court's disposition of the constitutional issue. See *Nottelson v. Smith Steel Workers,* 643 F.2d 445 (7th Cir.), *cert. denied,* 454 U.S. 1046, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981); *Tooley v. Martin-Marietta Corp.,* 648 F.2d 1239 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *Anderson v. General Dynamics Convair Aerospace Div.,* 648 F.2d 1247 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). In each of these cases, as in *Cummins,* the court found that the statute has a clearly secular purpose (elimination of discrimination in employment practices), that its primary effect neither advances nor inhibits religion and that it does not cause excessive government entanglement with religion. These decisions reflect each court's application of the three-part test established by the Supreme Court for determining whether a law violates the establishment clause. See *Committee for Public Education v. Nyquist,* 413 U.S. 756, 772–73, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973); *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Neither the union nor Essex has produced an argument which compels a reexamination of *Cummins.*

### B.

The burden was on Essex to demonstrate that an accommodation to Ms. McDaniel's religious convictions would have involved undue hardship. No universal definition of "undue hardship" is possible. In *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Supreme Court found that it would be an undue hardship for the employer to accommodate religious practices of an employee who refused to work on Saturdays. The record established that the employer could not accommodate the employee without violating seniority provisions of a collective bargaining agreement and denying other employees the shift and job preferences to which they were entitled contractually. Since the seniority system precluded TWA from assigning others in Hardison's classification to his normal Saturday shifts, in order to cover those shifts TWA would have had to pay overtime or hire an extra employee. The Court held that an employer may not be required to make substantial expenditures in order to accommodate the religious practices of an employee. "To require TWA to bear more than a *de minimus* cost in order to give Hardison Saturdays off is an undue hardship." 432 U.S. at 84, 97 S.Ct. at 2276.

▉ We agree with the district court that *Hardison* does not compel a finding that Essex would have sustained undue hardship in accommodating Ms. McDaniel. No expenditures for overtime or additional wages would have been involved. Nor was there any issue of seniority, which has a special status under Title VII because of the exception contained in § 703(h), 42 U.S.C. § 2000e–2(h).[1] There was no evidence that any other employee would be adversely affected if Ms. McDaniel had

---

1. § 703(h) provides in part:

Notwithstanding any other provision of this subchapter, it shall not be an unlawful

been permitted to retain her job without joining the union or paying union dues.

Essex argues that it was placed in a "no win" situation. It was bound by the union security clause of its collective bargaining agreement with IAM which was authorized by a provision of the National Labor Relations Act, 29 U.S.C. § 158(a)(3). If it had refused to discharge the plaintiff, Essex would have been in violation of its agreement with the union, and the Supreme Court stated in *Hardison,* 432 U.S. at 78–79, 97 S.Ct. at 2273–74, that an employer is not required to take steps which violate the terms of a valid agreement. We held on the first appeal that the provision of the National Labor Relations Act relied upon by Essex did not excuse a failure to accommodate. The district Court concluded on remand that where the union had made no attempt to accommodate to Ms. McDaniel's religious beliefs and practices, its demand for her discharge was unlawful. We agree. The only hardship which Essex points to is the necessity to litigate a dispute with the union for failing to discharge the plaintiff. Of course, its submission to the union's demand for the plaintiff's discharge embroiled Essex in litigation which has now lasted nearly ten years. *Cf. Nottelson, supra,* 643 F.2d at 453.

There is no denying that Essex was placed in a difficult position. Nevertheless, the accommodation requirement had been established by an EEOC regulation in 1967 and incorporated into Title VII by Congress in 1972. The employee, Ms. McDaniel, had made an offer to pay that portion of the dues required for peaceful collective bargaining to the union and the balance of the normal dues to a mutually-agreeable charity. Though the union did not claim that this arrangement would have caused it undue hardship,[2] it did not even reply to the

proposal. The union was in violation of Title VII in seeking "to cause or attempt to cause an employer to discriminate against an individual" employee on account of her religious beliefs. 42 U.S.C. § 2000e–2(c). Knowing of the plaintiff's proposal and of the union's complete failure to attempt any accommodation the employer was not justified in acceding to the request that Ms. McDaniel be discharged. *Hardison* is distinguishable. For TWA to have taken steps inconsistent with the seniority system would have adversely affected other employees and involved substantial expenditures. Since no such considerations were present here Essex was not permitted to "employ" the union security provision of its agreement with IAM to violate Title VII. The finding of the district court that Essex failed to establish that accommodation would cause undue hardship is not clearly erroneous.

The judgment of the district court is affirmed.

---

employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate be-

cause of race, color, religion, sex, or national origin, . . .

2. It was stipulated that no employee or prospective employee of the Essex plant other than Ms. McDaniel had "ever requested an accommodation for a religious belief which proscribes union membership or financial support."