INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, LODGE 751, Plaintiff–Appellant/Cross Appellee,

v.

The BOEING COMPANY, Defendant–Appellee,

and

Thomasine Nichols, Defendant–Appellee/Cross Appellant.

Nos. 86–4345, 86–4373.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1987.

Decided Nov. 27, 1987.

---

Edward M. Gaffney, Jr., Los Angeles, Cal., and Steven T. McFarland, Ellis & Li, Seattle, Wash., for defendant-appellee/cross appellant Thomasine Nichols.

Evan Jay Cutting, Office of General Counsel, Boeing Co., Seattle, Wash., for defendant-appellee Boeing Co.

Hugh Hafer and Cheryl A. French, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for plaintiff-appellant/cross appellee Int'l Assoc. of Machinists and Aerospace Workers.

Before KENNEDY and BEEZER, Circuit Judges, and NIELSEN,[*] District Judge.

BEEZER, Circuit Judge:

Based on her religious convictions, Nichols, an employee of the Boeing Company (Boeing), refused to become a member of or pay dues to the International Association of Machinists & Aerospace Workers, Lodge 751 (the Machinists). Nichols proposed to make a charitable contribution in lieu of paying dues. The union sued to compel Boeing to arbitrate the question of whether to discharge Nichols. The district court granted summary judgment in favor of Boeing and Nichols, 662 F.Supp. 1069. We take jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

A. *Facts and Issues*

The Machinists and Boeing entered into a collective bargaining agreement that includes a union security provision. That provision requires bargaining unit employees to pay union initiation fees and dues to the Machinists. Nichols, a bargaining unit employee, believes that union membership and support of labor organizations are contrary to her religious convictions. She requested exemption from the union security provision on the basis of her religious objections. Nichols proposed contributing a sum equal to her union dues to a charity. The Machinists rejected Nichols' proposal and requested that Boeing discharge Nichols. Boeing asserted that discharging Nichols would violate Title VII, which requires that employers take reasonable steps to accommodate the religious beliefs of their employees.

The union claims that section 19 of the NLRA, 29 U.S.C. § 169 supersedes Title VII's religious accommodation provision and does not protect the employee. Alternatively, the union contends that *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), compels us to hold that Title VII's religious accommodation provision violates the Establishment Clause of the First Amendment. These are issues of law, reviewable de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

---

[*] Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation.

## B. *Ninth Circuit Precedent*

In 1972 Congress amended Title VII of the Civil Rights Act. The 1972 amendment requires employers to take reasonable steps to accommodate their employees' religious beliefs. The reasonable accommodation duty was incorporated in Title VII's definition of religion:

The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

Section 701(j) of Title VII, 42 U.S.C. § 2000e(j).[1]

■ In 1981 we held that a substitute charitable contribution, proposed by Seventh Day Adventists who opposed joining or supporting a labor union, was a reasonable accommodation under section 701(j). *Tooley v. Martin–Marietta Corp.*, 648 F.2d 1239 (9th Cir.1981), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). As we said then:

The substituted charity accommodation is consistent with the balancing of interests promoted by section 701(j). Under this accommodation, the union is entitled to enjoy the benefits of the union shop agreement while the plaintiffs are entitled to practice in accordance with their religious convictions.

*Tooley*, 648 F.2d at 1242. We also concluded that exempting the Seventh Day Adventists from the union security clause would not "result" in an "undue hardship" on the union:

A 'widespread refusal to pay union dues' is sufficient to establish undue hardship, but that is not the contention here. The Steelworkers have not established that the 'substituted charity' accommodation, as applied here, will deprive the union of monies necessary for its maintenance or operation.

*Id.* at 1243–44. The loss of one employee's dues thus does not inflict undue hardship on a union. To prove undue hardship a union must demonstrate a widespread refusal to pay union dues.

In *Tooley* we also rejected the Steelworkers' Establishment Clause[2] challenge to section 701(j). Under *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed. 2d 745 (1971), a statute survives scrutiny under the Establishment Clause if: 1) the statute reflects a clearly secular purpose; 2) the statute has a primary effect that neither inhibits nor advances religion; and 3) application of the statute will not result in excessive government entanglement with religion.

■ Applying the *Lemon* test in *Tooley*, we held that section 701(j) was constitutional. First, section 701(j) was enacted to promote Title VII's policy of prohibiting discrimination in the workplace. Prohibiting discrimination is a legitimate secular purpose.[3] 648 F.2d at 1245. Second, the primary effect of the statute was neutral:

The substituted charity accommodation allows the plaintiffs to work without violating their religious beliefs, at a cost equivalent to that paid by their co-workers without similar beliefs. It neither increases nor decreases the advantages of membership in the Seventh–Day Adventist faith....

---

1. On its face section 701(j) applies to employers only. This court has held, however, that the duty to accommodate an employee's religious beliefs *extends* to unions as well as employers. *Tooley*, 648 F.2d at 1241; *Yott v. North American Rockwell Corp.*, 602 F.2d 904, 909 (9th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980).

2. The Establishment Clause states that "Congress shall make no law respecting an establishment of religion...." U.S. Const. amend. 1.

3. A statute can have a legitimate secular purpose even if it is "related" to religion. The secular purpose requirement "does not mean that the law's purpose must be unrelated to religion.... Rather, *Lemon* 's 'purpose' requirement aims at preventing [Congress] from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters." *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, —— U.S. ——, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987).

*Id.* at 1246. Finally, the accommodation would not result in excessive government entanglement with religion. A court's only task is to determine whether the employee's beliefs are sincere. Once a court has made this determination, it is for the employee and the union to agree on a mutually acceptable charity. As a result, "the substituted charity accommodation requires a minimal amount of supervision and administrative cost." *Id.*[4]

## II

■ The Machinists contend that section 19 of the NLRA, 29 U.S.C. § 169, enacted by Congress in 1980, supersedes section 701(j) of Title VII. The protections afforded employees' religious beliefs are not as broad under section 19 as they are under section 701(j). Section 19 provides in pertinent part:

> Any employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required ... to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund....

29 U.S.C. § 169. Hence under section 19 only employees who are members of "bona fide" religions which have "historically held conscientious objections" to joining unions may contribute to charities in lieu of paying their dues to the union. In contrast, Title VII defines religion as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). An employee who sincerely held religious beliefs opposing unions could be relieved from paying dues under Title VII, even if

he or she was not a member of an organized religious group that opposes unions. *See* 29 C.F.R. § 1605.1.

■ Nichols attends the Bethel Temple. This church permits members to join or support labor unions. Nichols claims, however, that her personal study of the bible has led her to oppose unions on religious grounds. It is uncontested that Nichols sincerely holds these beliefs. Nevertheless, the Machinists assert that Nichols is not exempt from the union security clause under section 19 because she is not a member of a religious organization which has historically objected to union membership. The Machinists concede that section 701(j) would exempt Nichols from the union security clause. They assert, however, that section 19 of the NLRA supersedes section 701(j) of Title VII.

■ In support of their claim that section 19 supersedes section 701(j), the Machinists invoke the maxim of statutory construction that a more recent specific statute prevails over an earlier and more general statute. This maxim only applies when there is an irreconcilable conflict between the statutes. *Chevron U.S.A., Inc. v. Hammond,* 726 F.2d 483, 490 n. 8 (9th Cir.1984), *cert. denied,* 471 U.S. 1140, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985). No conflict exists if the two statutes serve independent and separate purposes. *See Kidd v. United States Department of Interior, Bureau of Land Management,* 756 F.2d 1410, 1411 (9th Cir.1985).

■ It is well-settled that the rights created by Title VII are independent and separate from the rights created by the NLRA. According to the Supreme Court, "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state

---

4. The Supreme Court articulated a slightly different test for analyzing Establishment Clause challenges in *Wisconsin v. Yoder,* 406 U.S. 205, 234 n. 22, 92 S.Ct. 1526, 1542 n. 22, 32 L.Ed.2d 15 (1972) and *Sherbert v. Verner,* 374 U.S. 398, 409, 83 S.Ct. 1790, 1797, 10 L.Ed.2d 965 (1963). Under this test a statute accommodating religious beliefs survives constitutional scrutiny if:

1) the accommodation reflects government neutrality in the face of religious differences, and 2) the accommodation does not result in government sponsorship or financial support for a particular religious group. Applying this test, the *Tooley* panel once again concluded that section 701(j) was constitutional. *Tooley,* 648 F.2d at 1244–45.

and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974).

No irreconcilable conflict exists between section 701(j) of Title VII and section 19 of the NLRA. Congress has created a right to be free from religious discrimination in both statutes. The rights Nichols possesses under both statutes "have legally independent origins and are equally available to the aggrieved employee." *Id.* at 52, 94 S.Ct. at 1022. Nichols is free to pursue her remedies under Title VII; that her remedies may be broader under Title VII than under the NLRA merely reflects that Congress devised schemes with differing coverage and enforcement provisions, the more thoroughly to eradicate discrimination in the workplace.

The legislative history of section 19 furnishes additional support for Boeing's and Nichols' position. This legislative history indicates that Congress did not intend section 19 of the NLRA to supersede section 701(j) of Title VII. The House Report accompanying H.R. 4774 expressly stated that "[t]he bill would accommodate the religious beliefs of these persons and *thereby reconcile the National Labor Relations Act with Section 701(j) of the Equal Employment Opportunity Act.*" H.R.Rep. No. 496, 96th Cong. 1st Sess., 2 (1980) (emphasis added), U.S.Code Cong. Admin. News 1980, pp. 7158, 7159. As recently observed, "It is inconceivable that Congress would, in an amendment intended to increase religious freedom, act to foreclose individuals from protecting that freedom under Title VII. The only conclusion to be drawn from the legislative history is that Congress was, as it stated, attempting to reconcile the NLRA with Title VII...."

*EEOC v. Davey Tree Surgery Co.*, 671 F.Supp. 1260, 43 Fair Empl.Prac.Cas. (BNA) 1177, 1180 (N.D.Cal.1987).[5]

The Machinists rely on isolated statements made by Representative Eckhardt, who recognized that Title VII provided wider scope for religious accommodation than did the NLRA. Eckhardt opposed the section 19 amendment[6] because he feared it would restrict the broad, nontraditional definition of religion in section 701(j). 126 Cong.Rec. 2585 (1980). The Machinists contend that Eckhardt's concern shows Congress knew of the difference between section 19 and section 701(j) and therefore intended to limit the exemption to those individuals covered by section 19. This argument is unpersuasive. "In the legislative history of every statute, one may find critics of the bill who predict dire consequences in the event of its enactment. A court need not infer from such statements by opponents that Congress *intended* those consequences to occur, particularly where, as here, there is compelling evidence to the contrary." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 525, 105 S.Ct. 3275, 3288, 87 L.Ed.2d 346 (1985) (Powell, J., dissenting).

### III

In *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), the Supreme Court held that a Connecticut statute that provided employees with an absolute right not to work on their Sabbath violated the Establishment Clause. The Court concluded that the Connecticut statute's "unyielding weighting in favor of Sabbath observers over all other interests contravenes a fundamental principle of the Religion Clauses." *Id.* at 710, 105 S.Ct. at 2918. Specifically, the Court condemned the statute's command that "religious concerns automatically control over all secular interests at

---

**5.** The *Tooley* panel was not presented with the claim that section 19 superseded section 701(j). In dicta, however, the panel noted that "the substituted charity accommodation effects a reasonable reconciliation between the NLRA and Title VII, and otherwise constitutes a reasonable accommodation under section 701(j)."

*Tooley,* 648 F.2d at 1242. Thus the *Tooley* panel implicitly concluded that section 19 had not superseded section 701(j) of Title VII.

**6.** Before the 1980 amendment, section 19 applied only to health-care employees.

the workplace; the statute takes no account of the convenience or interests of the employer or those of other employees who do not observe a Sabbath." *Id.* at 709, 105 S.Ct. at 2918.

The Machinists contend that *Thornton* dramatically alters the law governing Establishment Clause challenges to religious accommodation statutes. In light of *Thornton*, the Machinists assert, this court must reevaluate the holdings we made in *Tooley*.

*Thornton* does not undermine *Tooley*. The Connecticut statute invalidated by the Supreme Court in *Thornton* contravened the Establishment Clause because of a complete failure to take into account the interests of the employer and other employees who did not observe a Sabbath. Unlike the statute in *Thornton*, section 701(j) does not give an unqualified right to employees to have their religious beliefs accommodated. By its terms section 701(j) is flexible, requiring only those accommodations which are reasonable and which may be accomplished without undue hardship. In this case, if there was a widespread refusal to pay union dues, Nichols' charitable contribution would be disallowed. She would be required to pay the union. *Tooley*, 648 F.2d at 1243–44. Thus 701(j) does not exhibit the defect of the Connecticut statute; here the substituted charitable contribution acknowledges legitimate interests of the Machinists and Boeing.

Justice O'Connor, concurring in the Court's judgment in *Thornton*, expressly stated that she did "not read the Court's opinion as suggesting that the religious accommodation provisions of Title VII of the Civil Rights Act of 1964 are ... invalid." 472 U.S. at 711, 105 S.Ct. at 2919. In addition, Supreme Court cases after *Thornton* indicate that section 701(j) is alive and well. *See Hobbie v. Unemployment Appeals Commission*, —— U.S. ——, 107 S.Ct. 1046, 1047 n. 1, 94 L.Ed.2d 190 (1987); *Ansonia Board of Education v. Philbrook*, —— U.S. ——, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986). In *Ansonia* the Court discussed the scope of an employer's obligations under section 701(j). If the Court implicitly had struck down section 701(j) in *Thornton*, the discussion of section 701(j) in *Ansonia* would have been academic.

*Thornton* does not represent a radical departure from previous Establishment Clause jurisprudence, and *Thornton* did not implicitly strike down section 701(j). Accordingly, we need not reconsider the holdings we made in *Tooley:* the substituted charitable contribution is a reasonable accommodation under section 701(j), and section 701(j) does not violate the Establishment Clause.[7]

### IV

Nichols asserts she is entitled to fees under Fed.R.Civ.P. 11 and Fed.R.App.P. 38 because the Machinists' claim is barred by res judicata and collateral estoppel. The Machinists concede that they previously litigated the constitutionality of the religious accommodation provision of Title VII with Boeing in an earlier lawsuit involving a different employee. This lawsuit preceded the Supreme Court's decision in *Thornton*.

Res judicata is inapplicable here. Under res judicata a judgment on the merits in a prior suit bars a second suit, involving the same parties or their privies, based on the same cause of action. *See Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The Machinists' suit against Nichols does not involve the same parties or the same cause of action as the previous lawsuit.

---

7. The Third Circuit recently considered and rejected a claim virtually identical to the Machinists' claim in *Protos v. Volkswagen of America, Inc.,* 797 F.2d 129 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986). In *Protos* an assembly line worker who was a member of the Worldwide Church of God requested to be excused from overtime work on Saturdays, her Sabbath. The Third Circuit concluded that Volkswagen could have reasonably accommodated the employee's religious beliefs, without incurring undue hardship, by granting her request. The Third Circuit also rejected Volkswagen's claim that *Thornton* implicitly struck down section 701(j).

Collateral estoppel may bar a plaintiff from asserting a claim that the plaintiff previously litigated and lost against a different defendant. *Parklane Hosiery,* 439 U.S. at 329, 99 S.Ct. at 650. Nevertheless, "[i]t has long been the rule in this circuit that an intervening Supreme Court decision clarifying an issue that has been uncertain in the lower courts defeats collateral estoppel." *Minnis v. United States Department of Agriculture,* 737 F.2d 784, 786 n. 1 (9th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985). *Thornton* clarified the constitutional law governing religious accommodation statutes; hence collateral estoppel is inapplicable and does not provide a basis for the award of fees.

In short, the Machinists' arguments were not frivolous under Fed.R.App.P. 38, and the Machinists' counsel satisfied the Rule 11 requirement of "a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11.

V

In *Tooley v. Martin–Marietta Corp.,* 648 F.2d 1239 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981), we held that charitable contributions in lieu of union dues were a reasonable accommodation under Title VII. We also held that Title VII's religious accommodation provision did not contravene the Establishment Clause. Section 19 of the NLRA does not supersede Title VII's religious accommodation provision. Congress, in enacting section 19, intended the NLRA to parallel Title VII, not to supersede Title VII. The Supreme Court's holding in *Estate of Thornton v. Caldor, Inc.,* 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), clarifies the law but does not undermine *Tooley.* Accordingly, we affirm the judgment of the district court and deny Nichols' fee request.

AFFIRMED.