**Maurice S. WILSON, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 90–5089.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1990.

Decided Dec. 4, 1990.

---

Bruce N. Cameron (argued), Milton L. Chappell, Springfield, Va., for petitioner.

Aileen A. Armstrong, Dep. Asso. Gen. Counsel, Linda Dreeben, James M. Stephens, Chairman, Julie Broido (argued), N.L.R.B., Washington, D.C., for respondent.

Before KRUPANSKY and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

Petitioner Maurice S. Wilson seeks review of a decision of the National Labor Relations Board ("Board") dismissing an unfair labor practice complaint which charged that the union unlawfully demanded that Wilson be discharged for failing to join the union or pay union dues. Because we hold that section 19 of the National Labor Relations Act, 29 U.S.C. § 169, is unconstitutional and cannot be construed as petitioner requests, we deny the petition for review.

## I.

In 1986, Grand Rapids City Coach Lines, Inc. ("the Company") and Amalgamated Transit Union, Local 836 ("the Union") were parties to a collective bargaining agreement which included a union security provision requiring employees covered by the agreement to become members of the Union. Maurice Wilson was hired by the Company in August 1986 as a mechanic's helper. On October 20, 1986, the Union asked Wilson to sign a card authorizing the Company to deduct union dues and initiation fees from his wages and forward the money to the Union. Wilson refused to sign the authorization card due to personal religious convictions against union membership.[1] On November 11, 1986, the Union again asked Wilson to sign the authorization card, and Wilson again declined to do so. However, Wilson did offer to pay an amount equal to union dues to a charitable organization.

On November 18, 1986, the Union made a written request to the Company to discharge Wilson for his failure to pay union dues and initiation fees as required by the collective bargaining agreement. The Company refused to discharge Wilson, and on December 16, 1986, the Union filed a grievance to compel the Company to comply with the collective bargaining agree-

---

1. Wilson is a Christian, and he is a member of Faith Assembly church in Warsaw, Indiana. Faith Assembly has no written creed or statement of doctrine other than the Bible. Wilson's opposition to union membership is based on his personal beliefs derived from the Bible. Among the scriptures relied on by Wilson are Matthew 5, 6, and 7 (the Sermon on the Mount), 2 Corinthians 6:14–18 ("Be ye not unequally yoked together with unbelievers...."), and Ephesians 6:5–9 ("Servants, be obedient to them that are your masters....").

ment. On February 9, 1987, the Company filed an unfair labor practice charge against the Union for demanding Wilson's discharge. On January 19, 1988, the General Counsel for the Board issued a complaint alleging that the Union engaged in an unfair labor practice in violation of 29 U.S.C. § 158(b)(2) by demanding Wilson's discharge, and a hearing on the complaint was held before an administrative law judge ("ALJ") on April 20, 1988.

On July 18, 1988, the ALJ issued a decision recommending that the complaint against the Union be dismissed. The ALJ concluded that the Union's discharge request was proper because Wilson failed to prove that he fit within section 19 of the National Labor Relations Act (NLRA), which exempts from union membership "[a]ny employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations...." 29 U.S.C. § 169. The ALJ determined that Wilson did not qualify for the section 19 exemption because he was not a member of a "bona fide religion, body, or sect" which holds conscientious objections to union membership. Rather, Wilson objected to union membership on the basis of personal religious convictions.

The General Counsel filed exceptions to the ALJ's decision; however, on March 31, 1989, a three-member panel of the Board affirmed the ALJ's decision and adopted his recommendation that the complaint be dismissed. In a footnote to its decision and order, the panel stated, "Although employee Wilson's personal religious beliefs do include a conscientious objection to joining or financially supporting labor unions, it has not been shown that he is a member of an organized religious group that historically has held the same belief regarding unions." One member of the panel observed that "any possible constitutional problems relative to the religion clauses of the first amendment suggested by the General Counsel need not be addressed." The Company took no further action upon dismissal of the complaint, but Wilson filed the present petition for review of the Board's decision and order.

The principal issues presented are (1) whether section 19 of the NLRA, 29 U.S.C. § 169, violates the religion clauses of the First Amendment, and, if so, (2) whether the statute can be construed to avoid any constitutional defect.

II.

We have jurisdiction to review the Board's order because the events which gave rise to the alleged unfair labor practice occurred in Grand Rapids, Michigan. See 29 U.S.C. § 160(f). The issues presented are questions of law which are reviewable de novo. NLRB v. Hydro Conduit Corp., 813 F.2d 1002, 1005 (9th Cir.1987).

Wilson concedes that his "religious beliefs about unions are his personal convictions, and are not based on the teachings of an 'organized' denomination or church of which he is a member." Thus, he does not qualify for the religious objectors' exemption under a literal reading of section 19. Because section 19 applies only to employees who are members of a "bona fide religion, body, or sect which has historically held conscientious objections" to joining or financially supporting labor organizations, Wilson contends that the statute violates the religion clauses of the First Amendment. Rather than invalidating the statute, Wilson argues that we should construe section 19 to avoid the constitutional defect by eliminating the membership requirement. Wilson urges this court to construe section 19 as applying to all employees having religious objections to joining or supporting unions, regardless of whether the employees are members of a religion, body, or sect which has historically held such objections. Wilson asserts that the legislative history of section 19 supports his proposed construction of the statute.

Section 19 of the NLRA, as amended in 1980, provides in relevant part:

Any employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically

held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required in a contract between such employees' employer and a labor organization in lieu of periodic dues and initiation fees, to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund....

29 U.S.C. § 169. As originally enacted in 1974, section 19 applied only to health-care employees. One court has observed that section 19 was amended in 1980 to reconcile the NLRA with section 701(j) of Title VII. *See International Ass'n of Machinists v. Boeing Co.*, 833 F.2d 165, 170 (9th Cir. 1987), *cert. denied*, 485 U.S. 1014, 108 S.Ct. 1488, 99 L.Ed.2d 715 (1988).

Congress amended Title VII in 1972 to require "employers to take reasonable steps to accommodate their employees' religious beliefs." *Boeing*, 833 F.2d at 168. Section 701(j) of Title VII incorporates the reasonable accommodation duty in the definition of religion:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). In cases brought under Title VII, courts have held that the duty to accommodate an employee's religious beliefs extends to unions as well as employers. *See Tooley v. Martin–Marietta Corp.*, 648 F.2d 1239, 1241 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Where a collective bargaining agreement includes a union security provision, courts have held that the duty to accommodate is satisfied by allowing an employee to donate an amount equal to union dues to a mutually acceptable charity. *See id.* at 1242; *see also McDaniel v. Essex Int'l, Inc.*, 696 F.2d 34, 36 (6th Cir.1982). The substituted charity accommodation lets the union enjoy the benefits

of a union security provision while permitting employees "to practice in accordance with their religious convictions." *Tooley*, 648 F.2d at 1242.

While section 19 of the NLRA codifies the substituted charity accommodation, "[t]he protections afforded employees' religious beliefs are not as broad under section 19 as they are under section 701(j)." *Boeing*, 833 F.2d at 169. "[U]nder section 19 only employees who are members of 'bona fide' religions which have 'historically held conscientious objections' to joining unions may contribute to charities in lieu of paying their dues to the union." *Id.* In contrast, Title VII protects "all aspects of religious observance and practice, as well as belief" regardless of membership in a religion, body or sect. 42 U.S.C. § 2000e(j). Thus, "[a]n employee who sincerely held religious beliefs opposing unions could be relieved from paying dues under Title VII, even if he or she was not a member of an organized religious group that opposes unions." *Boeing*, 833 F.2d at 169.

Section 701(j) of Title VII has been found to be constitutional. *See McDaniel*, 696 F.2d at 37; *Tooley*, 648 F.2d at 1245–46. The initial issue presented in this case is whether section 19 of the NLRA is constitutional. Our analysis begins with the Supreme Court's decision in *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). "*Larson* teaches that, when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions. If no such facial preference exists, we proceed to apply the customary three-pronged Establishment Clause inquiry derived from *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105 [29 L.Ed.2d 745] (1971)." *Hernandez v. Commissioner Internal Revenue*, 109 S.Ct. 2136, 2146–47, 104 L.Ed.2d 766 (1989).

■ Although both parties argue that the statute should be evaluated under the *Lemon* test, we conclude that section 19 is subject to strict scrutiny under *Larson*. "*Larson* indicates that laws discriminating *among* religions are subject to strict scruti-

ny, and that laws 'affording a uniform benefit to *all* religions' should be analyzed under *Lemon.*" *Corporation of the Presiding Bishop v. Amos,* 483 U.S. 327, 107 S.Ct. 2862, 2870, 97 L.Ed.2d 273 (1987) (emphasis in original) (citation omitted). Like the statute in *Larson,* which exempted from registration and reporting requirements only those religious organizations that received more than fifty percent of their total contributions from members, section 19 facially discriminates among religions because it exempts from union membership only those employees who are members of "bona fide" religious organizations having the beliefs described in the statute. Thus, section 19 creates a denominational preference by conferring a benefit on members of the religious organizations described in the statute.

When a law facially differentiates among religions, it is subject to strict scrutiny and it "must be invalidated unless it is justified by a compelling governmental interest." *Larson,* 456 U.S. at 247, 102 S.Ct. at 1685. Moreover, the law must be "closely fitted" to further the compelling governmental interest. *Id.* at 251, 102 S.Ct. at 1687. The Board contends that Congress had a compelling reason for drafting section 19 narrowly and that was "to direct 'difficult and troublesome' ... inquiries concerning the 'religious' nature of an objector's beliefs into a forum significantly better equipped to deal with such issues: the federal courts."

The Board's argument misconceives the nature of the inquiry under strict scrutiny. The Board offers an explanation for the distinction, but it does not identify a compelling governmental interest furthered by the statute. In the absence of any identifiable governmental interest served by the statute, we must declare it unconstitutional. Moreover, even were we to find that the statute served a compelling governmental interest of protecting religious freedom in the workplace, the statute would still fail strict scrutiny. While protection of religious freedom in the workplace may be a compelling governmental interest, section 19 could be more closely fitted to further this interest by paralleling the protection afforded by Title VII, which is without regard to membership in a particular religious organization.

Although application of the *Lemon* test is unnecessary to resolve the present case, we note that section 19 would also fail to pass constitutional muster under that test. *See Larson,* 456 U.S. at 252, 102 S.Ct. at 1687 (evaluating statute under *Lemon* after finding it failed strict scrutiny). To survive scrutiny under *Lemon,* "the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Id.* 456 U.S. at 251–52, 102 S.Ct. at 1686–88, 403 U.S. at 612–13, 91 S.Ct. at 2111–12 (citations omitted).

Wilson concedes that section 19 of the NLRA satisfies the first element of the *Lemon* test. The secular purpose element "does not mean that the law's purpose must be unrelated to religion...." *Amos,* 107 S.Ct. at 2868. Like section 701(j) of Title VII, section 19 has a legitimate secular purpose of eliminating discrimination in employment practices. *See Boeing,* 833 F.2d at 168; *McDaniel,* 696 F.2d at 37.

The second prong of the *Lemon* test asks whether the primary effect of the statute advances or inhibits religion. In *Tooley,* the court held that the substituted charity accommodation available under section 701(j) of Title VII "neither increases nor decreases the advantages of membership in the [plaintiffs' religion] in a manner so substantial and direct that it 'advances' or 'inhibits' the plaintiffs' religion." 648 F.2d at 1246. Similarly, in *Nottelson v. Smith Steel Workers,* 643 F.2d 445, 454 (7th Cir.), *cert. denied,* 454 U.S. 1046, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981), the court held that application of section 701(j) did not "have a primary effect of advancing the interests of religionists over nonreligionists or the beliefs of one sect over those of another." The court also noted that section 701(j) "requires no particular sectarian affiliation or theological

position...." *Id.* The same cannot be said for section 19.

Unlike section 701(j) of Title VII, section 19 of the NLRA does require a particular sectarian affiliation *and* a particular theological position. Section 19 requires an employee to be a member of *and* adhere to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or supporting unions. Section 19 also has the effect of increasing the advantages of membership in the type of religious organization described in the statute. If an employee is a member of a religion, body, or sect which has historically held conscientious objections to union membership, the employee qualifies for the exemption afforded by section 19, while employees having the same religious convictions against joining or supporting unions, but who are not members in a qualifying religion, must resort to filing an action under section 701(j) of Title VII. Thus, section 19 has the effect of advancing the beliefs of one sect over those of another.

Section 19 also fails the third prong of the *Lemon* test. Section 19 requires employers, and ultimately courts, to determine if the religion, body, or sect of which the employee is a member is bona fide and if it has historically held conscientious objections to joining or supporting unions. This inquiry certainly borders on excessive entanglement with religion. In *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 450, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969), the Court observed that the First Amendment forbids a court from determining "matters at the very core of a religion—the interpretation of particular church doctrine and the importance of those doctrines to the religion." Unlike section 701(j), the inquiry under section 19 requires more than simply determining if the employee's beliefs are sincere. It requires the court to validate the legitimacy of the religion, body, or sect and to verify the existence and longevity of its doctrine regarding labor unions.

The Board contends that the inquiry required by section 19 is not unlike the "concededly nonexcessive entanglement that occurs when a state must determine whether a purported church qualifies for a property tax exemption." *Cummins v. Parker Seal Co.*, 516 F.2d 544, 554 (6th Cir.1975), *aff'd by equally divided Court*, 429 U.S. 65, 97 S.Ct. 342, 50 L.Ed.2d 223 (1976), *vacated on other grounds unrelated to constitutionality*, 433 U.S. 903, 97 S.Ct. 2965, 53 L.Ed.2d 1087 (1977). The Board's analogy to tax cases is unpersuasive. In *Jimmy Swaggart Ministries v. Board of Equalization*, — U.S. —, 110 S.Ct. 688, 698, 107 L.Ed.2d 796 (1990), the Court observed that a generally applicable sales tax "is neutral and nondiscriminatory on questions of religious belief." The same cannot be said for section 19 because it distinguishes on the basis of religious belief. In *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 109 S.Ct. 2136, 2147, 104 L.Ed.2d 766 (1989), the Court held that routine regulatory application of neutral tax laws did not cause excessive entanglement because it involved *"no inquiries into religious doctrine*, no delegation of state powers to a religious body, and no 'detailed monitoring and close administrative contact' between secular and religious bodies...." (Emphasis added) (citations omitted). However, application of section 19 does involve inquiry into religious doctrine, and the result is excessive entanglement of government with religion.

■ Although Wilson argues that section 19 is unconstitutional, he does not seek to have the statute completely invalidated. Rather, Wilson wants section 19 construed so as to avoid the constitutional defect by eliminating the membership requirement. *See Communications Workers v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). Relying on the principle that courts should construe statutes to avoid constitutional defects, Wilson argues that the legislative history of section 19 supports construing the statute to apply to all employees having religious objections to union membership without regard to membership in a particular religion, body, or sect.

"It is of course true that federal statutes are to be construed so as to avoid serious doubts as to their constitutionality, and that when faced with such doubts the Court will first determine whether it is fairly possible to interpret the statute in a manner that renders it constitutionally valid." *Beck,* 108 S.Ct. at 2657. "But statutory construction may not be pressed 'to the point of disingenuous evasion,' and ... the Court may not embrace a construction that 'is plainly contrary to the intent of Congress.'" *Id.* (citations omitted). We need not review the legislative history of section 19 because it is not "fairly possible" to interpret the statute so as to render it constitutionally valid.

Wilson relies on *Grant v. Spellman,* 99 Wash.2d 815, 664 P.2d 1227 (1983) (en banc), in which the Washington Supreme Court construed a state statute having language very similar to section 19. The state statute required that "agreements involving union security provisions must safeguard the right of nonassociation of public employees based on bona fide religious tenets or teachings of a church or religious body of which such public employee is a member." *Id.* 664 P.2d at 1230; Wash. Rev.Code § 41.56.122(1). The court concluded that the statute was susceptible of two meanings, and using a disjunctive reading of the statutory language, the court held that the plaintiff, who held personal religious beliefs against supporting unions but was not a church member, qualified for the statutory exemption from paying union dues.

Although section 19 is similar to the statute construed in *Grant,* there is an important distinction which precludes the type of disjunctive reading given the state statute. The statute in *Grant* could be read disjunctively to "allow a person to claim the union dues exemption based on either (1) bona fide religious tenets, or (2) teachings of a church or religious body of which the person is a member." 664 P.2d at 1230. However, in section 19, the membership language and the conjunction "and" precede the language read disjunctively in *Grant.* Thus, it is not "fairly possible" to construe the statutory language to eliminate the membership requirement. Accordingly, it is impossible "to interpret the statute in a manner that renders it constitutionally valid." *Beck,* 108 S.Ct. at 2657.

Wilson alternatively urges this court to simply discard the membership language of section 19. Wilson argues that section 19 should be read as follows: "Any employee who holds conscientious objections to joining or financially supporting labor organizations shall not [be so required]." Wilson asserts that this result would be consistent with the savings provision of section 16 of the NLRA, which provides:

> If any provision of this subchapter, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this subchapter, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

29 U.S.C. § 166.

Wilson's argument amounts to a request for this court to perform a legislative function. However, courts cannot judicially redraft statutory language. *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985). The savings provision of the NLRA also fails to rescue Wilson. Section 16 preserves other provisions of the subchapter when one provision is declared invalid. It does not preserve the remainder of a provision when a portion thereof is invalidated. Section 16 also preserves the application of a provision to persons or circumstances other than those as to which it was held invalid as applied. This cannot save section 19 because it is unconstitutional on its face, not as it is applied.

Finally, Wilson argues that section 19 violates the free exercise clause of the First Amendment. Wilson contends that the free exercise clause requires that section 19 be expanded to protect the religious freedom of all employees, not just members of the religions described in the statute. "The free exercise inquiry asks whether government has placed a substan-

tial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez*, 109 S.Ct. at 2148. Thus, to establish a violation of the free exercise clause an individual must first show that the government has placed a substantial burden on the practice of his religion.

■ Section 19 does not burden Wilson's practice of his religion. Rather, section 19 gives special treatment to members of religions having the beliefs described in the statute because it requires employers to provide a substituted charity accommodation. On the other hand, nonmember employees having the same religious beliefs must file an action under section 701(j) of Title VII to obtain an accommodation. Because section 19 grants a benefit on the basis of membership in a particular religion, it violates the establishment clause, but this does not constitute a violation of the free exercise clause. While the free exercise clause may protect Wilson's religious beliefs, it does not mandate the form of accommodation offered by section 19.

### III.

In summary, Wilson persuasively argues that section 19 violates the establishment clause of the First Amendment. However, contrary to Wilson's contention, the statute cannot be construed to remedy the constitutional defect. Moreover, the free exercise clause of the First Amendment does not mandate the form of accommodation offered by section 19. Therefore, we hold that section 19 of the NLRA, 29 U.S.C. § 169, is unconstitutional. Accordingly, the petition for review is DENIED on the merits.