34 P.3d 1246 (2001)
In re the Welfare of A.T., Minor Child.
No. 25624-0-II.
Court of Appeals of Washington, Division 2.
November 21, 2001.
*1247 Susan Campbell Pratt, Assistant Attorney General, Tacoma, Counsel for Respondent.
Stephanie C Cunningham, Attorney At Law, Tacoma, Counsel for Appellant (Court Appointed).
QUINN-BRINTNALL, J.
A.T. is a two-and-a-half-year old girl who was exposed to cocaine in utero. The trial court terminated her mother's parental rights by default when she failed to appear at the termination hearing. A.T.'s father, M.C., was in prison when the baby was born. After he realized he might be the father, he had himself tested and established paternity. Because of a prior rape conviction, the trial court found aggravated circumstances existed under former RCW 13.34.130 (1998)[1] such that reasonable efforts to reunify A.T. and M.C. were not required. The court summarily concluded that all six factors for termination of parental rights were proven by clear and cogent evidence and it terminated M.C.'s parental rights.
We hold that the court incorrectly used the prior rape conviction to find "aggravated circumstances" under RCW 13.34.130 in this case. Thus, the court's conclusion that all requirements for termination of parental rights had been met is also in error. We vacate the court's order terminating M.C.'s parental rights and remand for further proceedings consistent with this opinion.

FACTS
A.T. was born precipitously at home on February 13, 1999. Her mother, M.T., brought her to Tacoma General Hospital where she delivered the placenta and then left against medical advice. The Tacoma Police Department took the baby into protective custody that day. According to the dependency petition, M.T. had no prenatal care and had used crack cocaine throughout her pregnancy. The baby tested positive for cocaine the day after her birth.
M.T.'s parental rights to this baby were terminated by default when she failed to appear at the dependency hearing.[2] M.T. is not the subject of this appeal.
*1248 After the birth, M.T. indicated that M.C. might be the father of A.T. At the time of birth, he was in prison for unlawful possession of methamphetamine. M.C. was not married to M.T.
At the time dependency was entered, M.C. had not established paternity. A review hearing was held on June 28, 1999, which noted that services would be provided to M.C. once he was proven to be A.T.'s father.[3] In preparation, M.C. took medical first aid, drug and alcohol treatment, and anger management classes while in prison. He sent letters to the Child Protective Services (CPS) worker and the Assistant Attorney General stating that he wanted to parent the child. In the interim, while he was finishing his sentence, he wanted CPS to place the baby with his wife, A.C.[4] CPS refused the placement request because M.C.'s wife was not a relative of the baby.
After paternity was established, the Department of Social and Health Services (DSHS) told M.C. that it would make reasonable efforts to reunify him and the baby. Subsequently, DSHS learned that M.C. had a 1987 sex offense (third degree rape) and that he failed to register as a sex offender in 1997. On October 21, 1999, DSHS requested that the trial court amend the review hearing order to classify this as an aggravated circumstance case under RCW 13.34.130(2). The court made that finding and discharged DSHS' duty to provide reasonable efforts to reunify A.T. with her father.
M.C. moved for the court to reconsider its decision on November 1, 1999, but the court denied the motion. The trial court terminated M.C.'s parental rights on January 19, 2000. M.C. timely appealed the termination order to this court.

ANALYSIS
FINDING OF AGGRAVATED CIRCUMSTANCES
M.C. challenges the trial court's determination that aggravated circumstances exist such that DSHS was relieved of its duty to provide services to reunify him with his daughter. The resolution of this issue requires an examination of the plain language of the statute, RCW 13.34.130(2)(x), as well as its legislative history. The statute states in pertinent part: "Conviction of the parent of a sex offense under chapter 9A.44 RCW or incest under RCW 9A.64.020 when the child is born of the offense."
Construction of a statute is a question of law that we review de novo. City of Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). The courts retain the ultimate authority to interpret a statute. Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325-26, 646 P.2d 113 (1982), cert. denied, 459 U.S. 1106, 103 S.Ct. 730, 74 L.Ed.2d 954 (1983). The reviewing court's obligation is to give effect to the Legislature's intent. Review begins with the plain language of the statute. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995).
Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. Boeing Co. v. Department of Licensing, 103 Wash.2d 581, 587, 693 P.2d 104 (1985); Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie, Fraternal Order of Eagles, 108 Wash.App. 208, 27 P.3d 1254, 1258 (2001). "Generally, a comma should precede a conjunction connecting two coordinate clauses or phrases in a statute in order to prevent the following qualifying phrases from modifying the clause preceding the conjunction." In re Personal Restraint of Mahrle, 88 Wash.App. 410, 414, 945 P.2d 1142 (1997) (quoting Ludwig v. State, 931 S.W.2d 239, 242 (Tex.Crim. App.1996)).
Where a statute is susceptible to more than one meaning, it is ambiguous. When a statute is ambiguous, this court attempts to determine the Legislature's intent. *1249 In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 778, 903 P.2d 443 (1995). A clarifying amendment may be applied retroactively so long as the amendment does not contravene previous court decisions construing the original statute. In re Dependency of Ramquist, 52 Wash.App. 854, 859, 765 P.2d 30 (1988) (citing State v. Jones, 110 Wash.2d 74, 82, 750 P.2d 620 (1988)).
At the time of trial, RCW 13.34.130 allowed for expedited termination of parental rights without requiring reasonable efforts to reunify the family if certain aggravated circumstances were found.[5] Specifically, the parties argued over the meaning of subsection (x), "Conviction of the parent of a sex offense under chapter 9A.44 RCW or incest under RCW 9A.64.020 when the child is born of the offense." RCW 13.34.130(2)(x). M.C. argued that the phrase "when the child is born of the offense" modified both "sex offense" and "incest." Thus, his rape conviction from 14 years ago would not qualify as an aggravated circumstance.[6] DSHS argued that the statute was ambiguous but still applied to M.C.
M.C. claimed that because all but one of the other nine factors refer to acts by the parent against the child that is the subject of the dependency or termination action or other family member, the Legislature intended to include only offenses that occur within the family or against this child, not all offenses by parents. He also claimed that interpreting RCW 13.34.130(2)(x) more broadly would contradict factor (i), conviction of the parent of rape of the child in the first, second, or third degree: "The only logical way to harmonize sections (i) and (x) is to find that a sexual assault conviction is an aggravated circumstance[] only where the child is the victim, under section (i) or the child is born of the offense, under section (x)." Appellant's Br. at 19.
Respondent DSHS initially argued that the "last antecedent rule" required the statute be read so that the modifier "born of the offense" applied to only "incest." Following this construction, M.C.'s prior sex offense is an aggravated circumstance under subsection (x). However, the agency later argued that the Legislature's subsequent amendment to the statute (placing the "born of the offense" clause before "sex offense" and "incest") resolved any ambiguity.[7] We agree that the amendment resolved the ambiguityin favor of the appellant, M.C. DSHS' argument concedes the appellant's statutory construction claim.[8]
Even amended, the statute may be read plausibly either way and is therefore ambiguous. This court, in construing subsection (x), may look to the construction of the other subsections to determine the legislative intent. Subsections (i) through (v) are all composed the same way. They refer to convictions of the parent for several crimes concerning "the child" who is the subject of the dependency. RCW 13.34.130(2)(i)-(v).[9] To interpret subsection (x) consistently, it should likewise be read as one in a list of crimes directly concerning the child in the dependency action. Otherwise, a punctuation mark separating the antecedent clause or more specific language would be required to deviate from the pattern. See N. SINGER, 2A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION, § 47.15 (6th ed.2000) (when punctuation conveys a clear meaning, the courts should give weight to it as evidence).
Because RCW 13.34.130(2)(x) may be read two ways, this court examines the legislative history to resolve the ambiguity. When a statute is ambiguous, this court resorts to *1250 legislative history and other aids for construction. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001). The goal of statutory construction is to give effect to the Legislature's intent. Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 185, 829 P.2d 1061 (1992).
The legislative history for the addition of section (x) to the aggravated circumstances factors further supports the appellant's claim that "when the child is born of the offense" modifies both offensesrape and incestin the statute. On February 5 and March 2, 1999, the House Judiciary Committee added "conviction of the parent of a sex offense when the child is born of the offense to the list of factors a court must consider" in finding aggravated circumstances.[10] The Senate Committee on Human Services and Corrections on April 1, 1999, used similar language: "A parent's conviction of a sex offense or incest is an aggravating factor in a dependency action concerning a child born as a result of the crime."[11] But, when the final bill passed on April 12, 1999, the aggravated circumstances language had been condensed to the current phrasing, "conviction of the parent of a sex offense or incest when the child is born of the offense."[12] Thus, the ambiguity came about only in the final drafting. The Legislature always intended that the phrase "when the child is born of the offense" refer to both offenses.
Based on the plain language and legislative history of the statute, the aggravated circumstances finding the court entered below is incorrect. A finding of aggravated circumstances under subsection (x) can be made only when the sex offense results in the birth of the child that is the subject of the dependency. M.C.'s 1987 rape conviction clearly did not result in the birth of A.T. Thus, because the finding in this case was based on a misinterpretation of the statute, it must be reversed as clear error.[13]
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
BRIDGEWATER, J. and ARMSTRONG, C.J., concur.
NOTES
[1] All references in this opinion to chapter 13.34 RCW are to former chapter 13.34 RCW (1998). Also all references to RCW 13.34.130(2)(x) are to former RCW 13.34.130(2)(x) (Laws of 1999, ch. 173, § 3), recodified and amended as RCW 13.34.132(4)(i).
[2] M.T. has a long history with Child Protective Services (CPS). Her parental rights to three other children have been terminated and a fourth child is currently a dependent of the State residing in foster care.
[3] Early on, M.C. claimed he might be Native American but was unsure because he had been adopted. Department of Social and Health Services (DSHS) confirmed he was not Native American and the Indian Child Welfare Act did not apply in this case.
[4] M.C. was sentenced to 22-29 months for unlawful possession of methamphetamine on December 29, 1998. He claims he could have been released as early as March 2000 for good behavior and no infractions. DSHS does not address this claim.
[5] That language is now found in RCW 13.34.132(4)(a)-(i).
[6] It is unknown from the record and from questioning at oral argument whether a child was even born of that offense.
[7] That statute now reads: "Conviction of the parent, when a child has been born of the offense, of: (A) A sex offense under chapter 9A.44 RCW; or (B) incest under RCW 9A.64.020." RCW 13.34.132(4)(i).
[8] Unfortunately, when the Legislature changed the statute, it created another problem. The statute now states "when a child has been born of the offense," not "the child" (emphasis added). Thus it could logically be read as a child other than the subject of the dependency who is born of the offense.
[9] Subsections (vi) through (ix) refer to crimes not involving "the child" at all.
[10] 
[11] 
[12] 
[13] DSHS argued in the alternative that the finding of aggravated circumstances was correct because non-statutory aggravated circumstances existed. It relied on a ruling by Division One of this court, In re Dependency of J.W., 90 Wash. App. 417, 953 P.2d 104, review denied, 136 Wash.2d 1021, 969 P.2d 1063 (1998) (RCW 13.34.130(2)'s list of mandatory considerations for aggravated circumstances is not exclusive). While this part of the holding appears to be contradicted by the Washington Supreme Court's decision in In re Custody of Smith, 137 Wash.2d 1, 969 P.2d 21 (1998), aff'd sub nom., Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (parental rights are a fundamental liberty interest and state interference must be narrowly drawn), we cannot reach that issue in this case because the trial court specifically found aggravated circumstances existed under the statute.