Honorable Joseph Zarelli State Senator, 18th District P.O. Box 40418 Olympia, WA 98504-0418
Dear Senator Zarelli:
By letter previously acknowledged, you have asked for an opinion on the questions paraphrased below:
 1. May employees exercise their rights of nonassociation with a union under RCW 41.80.100(2) based on their strongly held private religious objections to union membership, even if their objections are not based on the teachings of a church or religious body?
 2. Who makes the determination that employees qualify for the right of nonassociation under RCW 41.80.100(2), and what proof is necessary?
 3. May employees who pay the union fees and dues required by RCW 41.80.100 by personal check or other method instead of through a payroll deduction be discharged for failing to use the payroll deduction method?
 [Original page 2] BRIEF ANSWERS
1. Yes. Employees with strongly held personal religious beliefs may qualify for the right of nonassociation with a union under RCW 41.80.100(2). It is not necessary for the employees to establish that their religious objection to union membership is based on the teachings of a church or religious body.
2. If there is a dispute between the employee and the union over the right of nonassociation under RCW 41.80.100(2), it is resolved by the Public Employment Relations Commission. To qualify for the right, employees have the burden of making a factual showing through testimony of witnesses and/or documentary evidence (1) of their bona fide religious objection to union membership, and (2) that the religious nature of the objection is genuine and in good faith. The objection must be religious. A philosophical, sociological, ethical, or moral objection to union membership will not qualify.
3. No. The requirement in RCW 41.80.100(1) is that employees pay the dues and fees required by the collective bargaining agreement. Although employees may authorize a payroll deduction to make these payments, it is not required, and employees may not be discharged so long as they are current on their payments. However, if employees choose to pay by some method other than a payroll deduction, it is their responsibility to remain current. The employees must be informed of their obligation to make payments, but they are not entitled to monthly billings from the union.
 ANALYSIS 1. May employees exercise their rights of nonassociation witha union under RCW 41.80.100(2) based on their strongly heldprivate religious objections to union membership, even if theirobjections are not based on the teachings of a church orreligious body?
RCW 41.80.100(1) provides that a "collective bargaining agreement may contain a union security provision requiring as acondition of employment the payment . . . of an agency shop fee
to the employee organization that is the exclusive bargaining representative for the bargaining unit in which the employee is employed." (Emphasis added.) Thus, an employee may be discharged for failure to pay the required agency shop fee. Your letter refers to the collective bargaining agreement between the state of Washington and the Washington Federation of State Employees (WFSE) (Collective Bargaining Agreement By and Between the Stateof Washington and Washington Federation of State Employees,
effective July 1, 2005, through June 30, 2007 (Agreement)). The Agreement can be found at: http://www.wfse.org/?zone=/unionactive/view_article.cfmHomeID=9444 (visited June 12, 2006).
The union security provision of the Agreement is contained in Article 40.3, which provides:
 All employees covered by this Agreement will, as a condition of employment, either become members of the Union and pay membership dues or, [Original page 3] as non-members, pay a fee as described in A, B, and C below, no later than the 30th day following the effective date of this Agreement or the beginning of their employment. If an employee fails to meet the conditions outlined below, the Union will notify the Employer and inform the employee that his or her employment may be terminated.
(Emphasis added.)
The Legislature recognized that some employees may have religious objections to union membership and created the right of nonassociation in RCW 41.80.100(2), which provides in part:
 An employee who is covered by a union security provision and who asserts a right of nonassociation based on bona fide religious tenets, or teachings of a church or religious body of which the employee is a member, shall, as a condition of employment, make payments to the employee organization, for purposes within the program of the employee organization as designated by the employee that would be in harmony with his or her individual conscience. The amount of the payments shall be equal to the periodic dues and fees uniformly required as a condition of acquiring or retaining membership in the employee organization minus any included monthly premiums for insurance programs sponsored by the employee organization.
(Emphasis added.) Thus, employees with a religious objection to union membership need not join the union and, instead — as a condition of employment — must make payments to the union for purposes that would be in harmony with their religious beliefs.
The Agreement between the State and the WFSE recognizes this right of nonassociation. Article 40.3B of the Agreement provides in part:
 An employee who does not join the Union based on bona fide religious tenets, or teachings of a church or religious body of which he or she is a member,
will make payments to the Union that are equal to its membership dues, less monthly union insurance premiums, if any. These payments will be used for purposes within the program of the Union that are in harmony with the employee's conscience.
(Emphasis added.)
Your first question asks about whether employees' strongly held private religious objection to union membership will qualify for the right of nonassociation, even if this objection is not based on the teachings of a church or religious body. The Supreme Court answered this question in Grant v. Spellman, 99 Wn.2d 815,664 P.2d 1227 (1983). In Grant, the Court considered the interpretation of RCW 41.56.122(1), which provides that agreements "involving union security provisions must safeguard the right of nonassociation of public employees based on bonafide religious tenets or teachings of a church or religious body
of which such public employee is a member." Grant,99 Wn.2d at 819 (emphasis added).
[Original page 4] The Court focused on the phrase "bona fidereligious tenets or teachings of a church or religious body". The Court observed that the phrase was susceptible to two meanings. "If read conjunctively, it would require a public employee to belong to a church or religious body to claim a union dues exemption based on religious beliefs." Grant,99 Wn.2d at 819. On the other hand, if "read disjunctively, the statute would allow a person to claim the union dues exemption based on either (1) bona fide religious tenets, or (2) teachings of a church or religious body of which the person is a member." Id. The Court interpreted the statute disjunctively to avoid constitutional problems that a conjunctive reading of the statute might raise.Id. at 820.
Your question asks about the interpretation of RCW 41.80.100(2) instead of RCW 41.56.122(1). However, RCW 41.80.100(2) contains the same key phrase "based on bona fide religious tenets, orteachings of a church or religious body". The Legislature's use of the same language is significant for several reasons. First, the Legislature used the same phrase in two statutes on the same subject (collective bargaining by government employees). "Words used by the Legislature in different statutes governing the same subject matter are given the same meaning, unless the context dictates otherwise." In Re License of Farina, 94 Wn. App. 441,450, 972 P.2d 531 (1999) (citation omitted). If the phrase was given a disjunctive meaning in 1983 by the Supreme Court inGrant, a future court interpreting the same phrase on the same subject would likely give it the same meaning. Second, "The Legislature is presumed to be aware of judicial interpretation of its statutes." State v. Ritchie, 126 Wn.2d 388, 393,894 P.2d 1308 (1995) (citation omitted). Therefore, when the 2002 Legislature chose the phrase "bona fide religious tenets, or teachings of a church or religious body" for RCW 41.80.100(2), a court should presume that the Legislature meant to give this phrase the same disjunctive meaning as the Grant Court gave it in 1983. Finally, the Court in Grant expressly noted that if "the Legislature does wish to distinguish between personal and denominational religious beliefs, it may, of course, amend the statute". Grant, 99 Wn.2d at 820. It did not. Therefore, we conclude that the Legislature's use of the same language in RCW41.80.100(2) means that it intended the same disjunctive interpretation applied by the Supreme Court in Grant.
However, we would reach the same conclusion even if the Supreme Court had not decided Grant. RCW 41.80.100(2) uses the phrase "on bona fide religious tenets, or teachings of a church orreligious body of which the employee is a member". (Emphasis added.) The use of the word "or" between the phrase "bona fide religious tenets" and the phrase "teachings of a church or religious body" is presumed to be disjunctive. State v. Bolar,129 Wn.2d 361, 365-66, 917 P.2d 125 (1996) ("The placement of the word `or' in the statute between the words `one offense' and `separate offenses' means that the sentencing judge has only the two choices asserted by Bolar. `Or' is presumed to be used disjunctively in a statute unless there is clear legislative intent to the contrary."). This is further confirmed by the comma following the phrase "bona fide religious tenets". The comma indicates that the two phrases are to be read separately. In reWelfare of A.T, 109 Wn. App. 709, 714, 34 P.3d 1246 (2001), quoting In re Personal Restraint of Mahrle, 88 Wn. App. 410,414, 945 P.2d 1142 (1997) ("Generally, a comma should precede a conjunction connecting two coordinate clauses or phrases in a statute in order to [Original page 5] prevent the following qualifying phrases from modifying the clause preceding the conjunction.").[1]
 2. Who makes the determination that employees qualify for theright of nonassociation under RCW 41.80.100(2), and what proof isnecessary?
The Public Employment Relations Commission (PERC) has adopted rules that govern the right of nonassociation. WAC 391-95-030
provides that an "employee who claims a right of nonassociation based on bona fide religious tenets or teachings of a church or religious body of which such employee is a member shall provide written notice of that claim to the exclusive bargaining representative". Within 60 days, the exclusive bargaining representative must file a written response "as to both: (1) The eligibility of the employee to make alternative payments; and (2) The acceptance or rejection of the charitable organization(s) suggested by the employee." WAC 391-95-050. If there is a dispute about either point, or if the exclusive bargaining representative fails to make a timely response, the dispute is resolved by PERC. The rules provide for a hearing before a hearing examiner, with an appeal to the Commission. WAC 391-95-190, -250, -270.
PERC has also adopted a rule about the standard of proof to establish the right of nonassociation. WAC 391-95-230(2) provides that the "employee has the burden to make a factual showing, through testimony of witnesses and/or documentary evidence, of the legitimacy of his or her beliefs". "In cases where the claim of a right of nonassociation is based on personally held religious beliefs, the claimant employee shall demonstrate: (i) His or her bona fide religious objection to union membership; and (ii) That the religious nature of the objection is genuine and in good faith." WAC 391-95-230(2)(b). When an employee asserts personal beliefs, the "Commission cannot inquire into the reasonableness or plausibility of the religious beliefs claimed by an employee, but the Commission does apply an objective standard to determine, as a question of fact, whether the belief is religious, as compared with philosophical, sociological, ethical, or moral." In re the Matter of Hippe, 1992 WL 753264, at *5 (PECB Decision 4012) (Mar. 1992).
We cannot speculate as to exactly what kind of evidence would establish that an employee has a bona fide religious objection to union membership. It depends on the evidence presented in each individual case. For example, in In re the Matter of Kinuko,
2000 WL 1100317 (PECB Decision 7047) (May 2000), the employee "outlined her religious and spiritual history, affiliations, and practices. She also provided an explanation of some of the principles of Shinto and Aikido." Id. at *3. She went on to explain why "union behavior is not in alignment with my personal religious beliefs." Id. at *4. Other employees who were also union members testified that when they discussed union membership with her, she "consistently refused while citing her personal religious beliefs as the reason for her refusal." Id. at *6. Based on this [Original page 6] evidence, PERC found that the employee "has provided testimony and documents establishing that her objections to union membership are sincerely held and religious in nature, based on her personal religious beliefs and practices related to Shinto, Buddhism, Taoism, and Aikido." Id.
at *11.
PERC reached a different conclusion in In re the Matter ofHagy, 2002 WL 31317835 (PECB Decision 7842), (Sept. 2002). There, the employee testified that he had "strong religious beliefs" and is a believer in "`God and in his word in the Holy Bible; personal and moral beliefs kept him from joining the union'". Id. at *5. He also testified that he did "not belong to a church but considers himself an `organized body of religious belief'" [and he] "refused to articulate the nature of his religious beliefs, stating his religious beliefs prohibit him [from] explaining what they are." Id. Other employees, who testified at the hearing, quoted the employee as stating that "he did not like unions, that they were corrupt, that members paid money for no service". Id. at *5. These witnesses also testified that the employee "did not refer to religious beliefs."Id. In this case, PERC found that although the employee "stated that his refusal to join the union or pay an agency shop fee was based on personal religious or moral beliefs, [he] produced no evidence detailing those beliefs or establishing that they are held in good faith." Id. at *6. PERC also found that the "union provided uncontroverted testimony of other employees that [his] opposition to the unions is based upon personal, secular beliefs." Id. at *6.
Thus, to establish the right of nonassociation under RCW41.80.100(2), an employee must make a factual showing, through testimony of witnesses and/or documentary evidence, of the legitimacy of his or her beliefs. Whether an employee meets this burden depends on the facts of each individual case.
3. May employees who pay the union fees and dues required byRCW 41.80.100 by personal check or other method instead ofthrough a payroll deduction be discharged for failing to use thepayroll deduction method?
RCW 41.80.100(1) and Article 40.3 of the Agreement require employees to pay union fees and dues as a condition of employment. These fees and dues may be paid through a payroll deduction. RCW 41.80.100(3) provides:
 Upon filing with the employer the written authorization of a bargaining unit employee under this chapter, the employee organization that is the exclusive bargaining representative of the bargaining unit shall have the exclusive right to have deducted from the salary of the employee an amount equal to the fees and dues uniformly required as a condition of acquiring or retaining membership in the employee organization. The fees and dues shall be deducted each pay period from the pay of all employees who have given authorization for the deduction and shall be transmitted by the employer as provided for by agreement between the employer and the employee organization.
(Emphasis added.)
[Original page 7] RCW 41.80.100(3) authorizes union dues and fees to be paid by payroll deduction. Your third question asks whether employees may choose to pay by personal check or some other method — instead of payroll deduction — without being discharged. In our judgment, employees can pay their union dues and fees by some method other than payroll deduction without being subject to discharge.
The language of RCW 41.80.100(3) does not support the conclusion that employees must pay by payroll deduction. RCW41.80.100(3) provides that the "fees and dues shall be deducted each pay period from the pay of all employees who have givenauthorization for the deduction and shall be transmitted by the employer as provided for by agreement between the employer and the employee organization." (Emphasis added.) This provision authorizes the employer to deduct fees and dues from employees' pay and disburse this money over to the exclusive bargaining unit, but only for "employees who have given authorization forthe deduction". Id. (emphasis added). RCW 41.80.100(3) does not authorize the employer to deduct dues and fees from the pay of employees who have not given authorization for the deduction.
Moreover, the union security provision relates to the payment of the dues and fees, not the method of payment. RCW 41.80.100(1) provides that a "collective bargaining agreement may contain aunion security provision requiring as a condition of employmentthe payment . . . of an agency shop fee to the employee organization that is the exclusive bargaining representative for the bargaining unit in which the employee is employed." (Emphasis added.) The condition of the union security provision is "thepayment . . . of an agency shop fee to the employee organization". RCW 41.80.100(1). There is nothing in the union security provision related to the method of payment.
PERC reached the same conclusion in In re the Matter ofVeljic, 1995 WL 853393 (PECB Decision 4882-A, 4883-A) (Oct. 1995). Veljic concerned RCW 41.56.110, which provides that upon "the written authorization of any public employee within the bargaining unit . . . the public employer shall deduct from the pay of such public employee the monthly amount of dues as certified by the secretary of the exclusive bargaining representative and shall transmit the same to the treasurer of the exclusive bargaining representative." (Emphasis added.) In interpreting this statute, PERC rejected the contention that employees were required to authorize payroll deductions. According to PERC, the "right of employees to `authorize' is inherently accompanied by the right to refrain from authorizing a payroll deduction. An employee covered by Chapter 41.56 RCWcannot be compelled to utilize payroll deduction, as opposed tomaking payments by cash or check directly to the union."Veljic at *6 (emphasis added).[2]
The key is that the statute provides that the employee may authorize the deduction. While the language of RCW 41.80.100 is not identical to the language of RCW 41.56.110, both allow a payroll deduction when authorized by the employee.
[Original page 8] This conclusion is also consistent with the collective bargaining agreement between the State and WFSE. Article 40.3 of the Agreement provides that all "employees covered by this Agreement will, as a condition of employment, either become members of the Union and pay membership dues or, as non-members, pay a fee". The requirement is that members pay membership dues and nonmembers pay a fee. Article 40.3 further provides that: "If an employee fails to meet the conditions outlined below, the Union will notify the Employer and inform the employee that his or her employment may be terminated." Thus, under Article 40.3, employees must make payments to the union as a condition of employment. Nothing in Article 40.3 refers to how the payments should be made.
The collective bargaining agreement does reference payroll deductions. Article 40.4 of the Agreement provides that the "employer agrees to deduct the membership dues, agency shop fee, non-association fee, or representation fee from the salary ofemployees who request such deduction in writing. Such requests will be made on a Union payroll deduction authorization card." (Emphasis added.) Thus, the employer agrees to deduct dues and fees from employees' pay, but only for "employees who requestsuch deduction in writing." Agreement at Article 40.4 (emphasis added).
The collective bargaining agreement also refers to cancellation of an employee payroll deduction. Article 40.5 of the Agreement provides that an "employee may cancel his or her payroll deduction of dues by written notice to the Employer and the Union. The cancellation will become effective on the second payroll after receipt of the notice. However, the cancellation may cause the employee to be terminated, subject to Section 40.3, above." Article 40.5 specifically recognizes that an "employee may cancel his or her payroll deduction". It further cautions "cancellation may [not "will"] cause the employee to be terminated, subject to Section 40.3". Agreement at Article 40.5. We understand the reference to Article 40.3 to mean that when employees cancel their payroll deduction, they will be subject to possible discharge if they do not continue to pay their union dues.
PERC has dealt with cases in which employees who cancelled their payroll deduction were later discharged — not for canceling the payroll deduction, but for failure to pay their dues. In Inre the Matter of Browning, 1992 WL 753236 (PECB Decision 3872-A) (Nov. 1992), an employee cancelled her payroll deduction. After canceling the payroll deduction, the employee failed to pay her union dues, and the union sought to enforce the union security provision by seeking the employee's discharge. The employee argued that she was not given notice by the union of the amounts she was required to pay. PERC rejected this argument, stating:
 Employees subject to a union security obligation are responsible for keeping their union dues payments current. This is particularly true for employees who choose to make direct payments to the union, rather than enrolling for dues check-off under RCW 41.56.110. Such an employee must be informed of his or her obligations under WAC 391-95-010, but is not statutorily entitled to monthly billings from the union such as are commonly received from credit card firms, department stores and public utilities.
Id. at *11 (emphasis added).
[Original page 9] In sum, RCW 41.80.100(3) does not require employees to pay their union dues by payroll deduction. Employees may pay by other methods. However, if employees do not use the payroll deduction, they must ensure that they make the required payments. Choosing not to use the payroll deduction method will not result in discharge, but failure to make payments may.
We trust that the foregoing information will prove useful.
Sincerely,
 ROB McKENNA Attorney General
 GREG OVERSTREET Special Assistant Attorney General For Government Accountability
:pmd
[1] While researching this opinion, we received material asserting that a contrary reading of the statute — that is, reading it to require an employee to belong to a specific religious group with a tenet or teaching on the subject of union membership — would render the statute as violating the federal "free exercise of religion" constitutional rights of employees. We do not reach this constitutional issue in light of our conclusion that the statute should be read in the disjunctive.
[2] The Attorney General's Office reached the same result in AGLO 1970 No. 68, where we concluded that RCW 41.56.110 would prohibit a collective bargaining agreement from "requiring the [employer] to withhold union dues and pay the same over to the union without the express consent of each . . . employee covered by the agreement." AGLO 1970 No. 68, at 2.